James J. Crisona, J.
Plaintiffs move (1) for summary judgment against defendants The Travelers Insurance .Company and The Mutual Benefit Life Insurance Company and (2) to substitute the executors of the estate of one of the plaintiffs, Jacob Krohn. Each of said defendants cross-moves for summary judgment.
The substitution branch of plaintiffs’ motion is granted without opposition.
The salient facts underlying the controversy are as follows: On September 14, 1955 a trust agreement Avas entered into between three officers (therein and hereinafter referred to as the Trustees) of the Luggage and Leather Goods Manufacturers of America, Inc. (therein and hereinafter referred to as the Association) on the one hand and certain employer members of that Association on the other. The purpose of that agreement was to establish a group insurance fund. Management of the fund was vested in the Trustees whose powers and duties were spelled out in detail.
In November of 1957 Ace Auto Luggage, Inc., (hereinafter referred to as Ace Auto) applied to the Trustees for insurance coverage of its three officers; to Avit: Irving Steinlauf, now deceased, president; plaintiff Jack Krohn, now also deceased, secretary; and plaintiff Samuel Schwartz, treasurer. The application was accepted and each insured for $5,000 under a policy issued by Travelers effective February 15, 1958. Beneficiaries under each policy were the two officers other than the named insured. In December, 1957 the Trustees increased the amount of insurance under the plan (so far as applicable to the parties here) to $25,000 per person. Travelers’ coverage was increased to $10,000 and a policy for the remaining $15,000 was issued by Mutual Benefit. By letter dated December 6, 1957 those previously insured only in Travelers were adAdsed of the increase and invited to participate. Ace Auto applied for the increase, which application was duly accepted, and by its check dated February 25, 1958, Ace Auto paid to the Trustees the required contribution through April 14,1958. An invoice for the premium due on April 1, 1958, for the period April 15, 1958, to May 14, 1958, was sent by the Trustees to Ace Auto on March 14, 1958.
In the latter part of March, 1958 Steinlauf telephoned Jack Citronbaum, administrator of the fund, and advised him in effect that Ace Auto wished to terminate its coverage. Steinlauf inquired Avhether the amount of insurance could be reduced and *367 was told that it could not. Steinlauf confirmed that telephone conversation by the following letter, dated March 31, 1958:
Luggage, Leather Goods and Allied Industries
Group Insurance Fund
220 Fifth Avenue
New York 1, N. Y.
Gentlemen: Att: Mr. Cintronbaum
As per telephone conversation we are returning to you your Invoice as of 3/14/58 for cancellation. We would be interested however in a policy for $5,000.00 for each of the following: Jack Krohn, 5,000 Sam Schwartz 5,000 and Irving Steinlauf 5,000. Hoping to be able to secure same policy, we beg to remain
very truly yours,
ACE AUTO LUGGAGE CO., INC.
/s/ I. Steinlauf
/t/ I. Steinlauf, President
By letter to Steinlauf dated April 2,1958, Citronbaum replied in pertinent part as follows:
“ This will acknowledge receipt of your letter of March 31st and in accordance with your request, the insurance coverage at $25,000 per person for Jack Krohn, Sam Schwartz and yourself will be cancelled as of the end of your paid premium period, April 14, 1958.
“ We note your request for $5,000 coverage. Unfortunately, this is not possible.
“ Under the rules governing the Luggage, Leather Goods and Allied Industries Group Insurance Fund, once the amount of insurance was set as of February 15, 1958, that amount is irrevocable except for complete cancellation.
“ Should you change your decision concerning the $25,000 coverage before April 14, 1958, please inform us at once.”
Steinlauf replied to that letter by letter dated April 4, 1958, reading in pertinent part as follows :
“Referring to your letter of 4/2/58 please be advised that we are cancelling our Insurance Policy as per 4/14/58 as stated in your letter.
“We are very sorry not being able to give us a coverage of $5,000 only.”
No contribution to the fund was thereafter made by Ace Auto. The insurance on the lives of its officers was marked terminated and cancelled by the Trustees as of April 14, 1958. The next premium payments sent to the respective insurance companies by the Trustees reflected this termination by their decreased over-all amounts and the IBM cards belonging to Mutual Benefit which listed the names of Steinlauf, Krohn and *368 Schwartz were returned to it on April 17, 1958, with the notation that the insurance was terminated and cancelled as of April 14, 1958. Steinlauf died on June 8, 1958, and it is to recover the proceeds of the insurance policy on his life that this action was brought, demand therefor having been made on the Trustees on November 25, 1958.
Was the insurance on Steinlauf’s life in effect on June 8, 1958? The court is of the opinion that it was not. Whether the insurance was terminated in precise accordance with the terms of the respective insurance policies is of no moment, although the court believes that it was. Under the policy issued by Mutual Benefit, coverage terminated when an employer ceased to be a participating employer (pars. Al[a], Cl), which Ace Auto ceased to be as of April 14, 1958, and coverage similarly terminated under the policy issued by Travelers (art. IV, par. A3). As stated by Mr. Justice Shientag in Degnan v. Metropolitan Life Ins. Co. (178 Misc. 312, 313 [App. Term, 1st Dept.]), “The failure to pay premiums, and the notice of cancellation given by the employer operated to relieve the insurance company from liability.”
In any event we have here termination of insurance coverage by mutual consent. “It is well established that the right to terminate a contract by mutual consent exists independent of any provision in the contract permitting the parties so to do, and that the parties may annul the contract notwithstanding a contrary provision.” (Prillaman v. Century Ind. Co. of Hartford, 138 F. 2d 821, 823; see 3 Appleman, Insurance Law & Practice, § 1811, pp. 416-417.) And cancellation by mutual consent forestalls the operation of any grace period which would otherwise have run in favor of the insured. As stated by Mr. Justice Wenzel in Griffing v. Commercial Cas. Ins. Co. (N. Y. L. J., June 27, 1947, p. 2529, col. 6), “If plaintiff’s intestate had not attempted to cancel the policy, the accident which he suffered would have occurred within the period of grace and the policy would have been in force and he would be entitled to recover. The determination of this case depends, therefore, on the effect to be given to the letter of cancellation written by plaintiff’s intestate. In the absence of any specific provision, the contract was subject to the general rule that parties to an ■agreement may, by mutual consent, cancel it * * *. The letter of plaintiff’s intestate was an offer to cancel, which offer was accepted by the defendant when it no longer deducted premiums from his pay.” (Emphasis supplied.)
That Steinlauf may not have had actual authority to terminate the insurance coverage of the three individuals concerned *369 is immaterial so far as the Trustees and the insurance companies were concerned. Certainly, he had ostensible authority to do so. Such was sufficient, for under paragraph 9 of the trust agreement the Trustees were to be “ protected in acting upon any paper or document believed by them to be genuine and to be made, executed or delivered by the proper party purporting to have made, executed or delivered the same ”. Under paragraph 1 of that agreement the Trustees were empowered to terminate an employer’s participating in the fund and discontinue the insurance on its employees ‘‘ If the contribution required *’ * * is not made within a ten-day period from the date of demand by the Trustees * * * after notice to the Employer Member”. Here, said contribution was never made although demand therefor was made on March 14, 1958, and Ace Auto was given until April 14 within which to change its decision about the cancellation. Furthermore, so far as the insurance companies were concerned, they were further justified in relying upon the action taken by the Trustees for, under paragraph 14 of the trust agreement, “No party dealing with the Trustees in relation to this trust shall be obliged to see to the application of any money or property of the Trustees, or to see that the terms of this trust have been complied with, or shall be obliged to inquire into the necessity or expediency of any act of the Trustees, and every instrument executed by the Trustees shall be conclusive in favor of every person therein (1) that at the time of delivery of said instrument the trust hereby created was in full force and effect; (2) that such instrument was issued in accordance with the terms and conditions contained in this Trust Agreement; and (3) that the Trustees were duly authorized and empowered to execute such instrument.”
The insurance companies in the case at bar had no knowledge, nor are they chargeable with any, of the precise reason for termination of the insurance coverage of the officers of Ace Auto. Such being the case, they are not liable to plaintiffs (Degnan v. Metropolitan Life Ins. Co., supra; cf. De Leon v. Aetna Life Ins. Co. of Hartford, 194 Misc. 953).
The summary judgment branch of plaintiffs’ motion is accordingly denied and the cross motions for summary judgment are granted. Submit order.