TEXAS LIFE INSURANCE COMPANY v. A. R. ROBERTS.

Decided April 14, 1909.

**1.—Contract—Personal Services—Breach—Damages—Evidence.**

A contract for personal services merely, to be compensated in part by commissions on business done, is distinguished from one where other than personal services are expended for a similar return; the latter is a contract for profits as such; the former is for compensation for services, not profits, and in reduction of the damages for breach of the contract by the hirer, depriving the hired of the employment and its compensation, evidence is admissible to show that other employment was secured after the breach and what compensation plaintiff received therefor. Wells v. National Life Ass'n of Hartford, 99 Fed., 222, 53 L. R. A., 1, distinguished.

**2.—Same—Case Stated.**

Plaintiff was employed by an insurance company for a term of ten years, as an actuary and superintendent of agencies, for a salary and expenses and also a commission on gross premium receipts during the term, and further commission on policies written by him personally. In an action for damages by his wrongful discharge it is held that the compensation agreed on was for personal services, as distinguished from profits, and that evidence offered by defendant of other employment obtained by him after his discharge, and of the

compensation received therein was improperly excluded.    Kramer v. Wolf Cigar Stores Co., 99 Texas, 597, followed.

**3.—Servant—Definition.**

Servant, in law, is in most cases synonomous with employee, and the relation exists whenever the employer retains the right to direct the manner in which the business shall be done, whatever the rank or position of the employee.

**4.—Damages—Waiver.**

A contract of employment for a term of years retained in the employer a right to terminate the contract sooner if found not to be profitable, fixing a compensation to the employee in such case. Plaintiff sued for breach, claiming that it had been terminated wrongfully and in bad faith, and waived all claims arising under the contract by its rightful termination. Held that his action being one for wrongful breach of the contract of employment, defendant was entitled, notwithstanding such waiver, to show in reduction of damages, that plaintiff afterward obtained other employment during the term, and at what compensation.

**5.—Evidence—Good Faith.**

On the issue of good faith in the discharge of an employee, evidence of the amount of expense accounts submitted by him for allowance under his contract of employment should have been received.

**6.—Employment—Right to Discharge—Ambiguous Contract—Question of Fact.**

A contract by which an insurance company retained the right to discharge one employed for a term of ten years as its actuary and superintendent of agencies in case the business produced by him was insufficient to be profitable to the company, on which question the vote of its directors should be final, is held ambiguous as to whether the right to discharge was absolute, with or without cause, and a submission of that question to the jury held to be proper.

**7.—Employment—Right to Discharge—Contract—Good Faith.**

Where the right to discharge an employee is, by the contract, not an absolute one, but to be exercised for cause, though the directors of the employing corporation are made by the contract the final judges of such cause, suit will lie for their action in so discharging if it was without cause and done in bad faith.

Appeal from the District Court of McLennan County. Tried below before Hon. Marshall Surratt.

*Baker & Thomas, Taylor & Gallagher, W. B. Carrington* and *Eugene Williams,* for appellant.—Under the plain letter and spirit of the contract the vote of appellant's board of directors was final upon the question as to the profitableness of the business produced by appellee through the agency force of the company, and further, the board of directors had the power to discharge him irrespective of the profitableness of the business produced, and the court erred in failing to sustain the general demurrer on each of these grounds. Every word must be given meaning, and no clause be treated as redundant. Texas & P. Ry. Co. v. DeMilley, 60 Texas, 194; 9 Cyc., 583. The whole contract must be construed together and the intention of the parties be gathered from the whole. Hearne v. Gillett, 62 Texas, 26; 9 Cyc., 584. If one clause be at variance with another, the one contributing most essentially to the contract will be entitled to more consideration than that which contributes less. 9 Cyc., 583, 584.

The agreement being that the vote of the board shall be "final," and such vote having been passed by the board, the word "final," as

used in the contract, having the effect of a contract obligation, gave a vested contract right to terminate the contract whenever the board should vote upon the question, and the issue of motive in the exercise of such right is eliminated, it being impossible to commit a fraud or to act in bad faith by doing that which the contract gives a lawful right to do. A covenant not to sue may be pleaded in bar of an action. Smith v. Garrett, 29 Texas, 52; Blair v. Reed, 20 Texas, 310. An agreement that the employer shall be satisfied is enforceable. Sanger v. Slayden, 7 Texas Civ. App., 605, and numerous cases cited; Watkins v. Napier, 17 Texas Ct. Rep., 523, and numerous cases cited. An agreement that the employer may fix compensation is upheld. Tennant v. Fawcett, 94 Texas, 111. The services performed to be satisfactory to the employer. Johnson v. Birdrell, 8 N. Y. Supp., 485; Johnson v. Birdrell, 15 Daily, 492.

The board had "the power to terminate the contract at any time they shall consider it for the best interest of the company to do so" as a contract right vested in the board distinct from and cumulative of the power to make "final" the question of the profitableness of the business produced. Watkins v. Napier, 17 Texas Ct. Rep., 523; Sanger v. Slayden, 7 Texas Civ. App., 605; Lane v. Kolb, 92 Ala., 665; O'Brien v. Carson, 42 Iowa, 554; Porter v. Moores, 4 Heisk. (Tenn.), 19; State Board v. New Jersey Ry. Co., 48 N. J. L., 352; 2 Am. & Eng. Ency. Law, 332; 9 Cyc., 583, 584; 2 Cyc., 286.

The court erred in failing to construe the contract of April 15, 1905, and in submitting it to the jury for a construction. Summers v. Mills, 21 Texas, 91; Ash v. Beck, 68 S. W., 55; Lary v. Young, 27 S. W., 910; Gulf, etc., Ry. Co. v. Malone, 25 S. W., 1077; Linch v. Paris Lumber Co., 14 S. W., 701.

The contract of employment pleaded and proved by appellee was a contract of hiring for personal services and damages for the breach, if any, thereof must be measured by the ordinary rules applicable to personal service contracts  Meade v. Rutledge, 11 Texas, 44; Fowler v. Waller, 25 Texas, 696; Efron v. Clayton, 35 S. W., 424; Hearne v. Garrett, 49 Texas, 619; Litchenstein v. Brooks, 75 Texas, 196; Mallory v. McKaye, 92 Fed., 750; Jeter v. Penn, 26 Am. Rep., 98; Goebel v. Pomeroy, 55 Atl., 690; Kansas Union Life Ins. Co. v. Burman, 141 Fed., 835; Roth v. Spero, 96 N. Y. Supp., 211.

Proof of the earnings of an employe from the time of discharge up to the trial are admissible as a proper deduction from or offset to the damage suffered by the employe on account of the breach of his contract of employment. Meade v. Rutledge, 11 Texas, 44; Fowler v. Waller, 25 Texas, 696; Efron v. Clayton, 35 S. W., 424; Hearne v. Garrett, 49 Texas, 619; Litchenstein v. Brooks, 75 Texas, 196; Southwestern T. & T. Co. v. Bross, 45 S. W., 178; Kramer v. Wolf Cigar Stores Co., 99 Texas, 597; Weber Engine Co. v. Bradford, 34 Texas Civ. App., 543; Allgeyer v. Rutherford, 45 S. W., 628; Kessler & Co. v. Ellis, 87 S. W., 798; Goebel v. Pomeroy, 55 Atl., 690; Roth v. Spero, 96 N. Y. Supp., 211; Kansas Union Life Ins. Co. v. Burman, 141 Fed., 843.

*Sleeper, Boynton & Kendall,* for appellee.—The provisions in the

contract of employment for the termination of same by defendant, when construed together and taken as a whole, entitled the defendant to terminate the contract only when its board of directors, acting in good faith, concluded that the plaintiff had failed to produce, through the agency force, sufficient business to make the business profitable to the defendant; but if said board acted in bad faith in reaching such conclusion, and based its action on the fraudulent purpose and intent to deprive the plaintiff of the benefit of his contract, notwithstanding the business produced was profitable to defendant, then defendant had no right to terminate the contract, and the allegations of the plaintiff's petition clearly showed that the business produced was profitable to defendant, and that the directors acted in bad faith and in fraud of plaintiff's rights, and was not subject to the general demurrer. 9 Cyc., 583, 584; Hearne v. Gillette, 62 Texas, 26; Sanger v. Slayden, 7 Texas Civ. App., 614; Crawford v. Pub. Co., 163 N. Y., 404; Smith v. Robson, 148 N. Y. 252; Fuller v. Downing, 104 N. Y. Supp., 993; Furniture Co. v. Frazier, 55 S. W., 192; Grinnel v. Kiralfy, 55 Hun, 422.

The statement in the contract "and they shall have the power to terminate the contract at any time they shall consider it to the best interest of the company to do so" occurs in the paragraph providing for termination of the contract by defendant in event sufficient business was not secured by appellee to make the contract profitable, and, to say the least, it was uncertain that the quoted sentence gave the right to defendant to cancel the contract except for failure of appellee to write sufficient business to make the contract profitable to the company, and was therefore in that respect ambiguous, and it was proper for the court to submit the question to the jury. Lemp v. Armengol, 86 Texas, 690; Brown on Parol Evidence, 190; Lawson on Contracts, sec. 389.

The plaintiff having waived all claims for salary and other remunerations for personal service to be rendered after April 3, 1906, under his contract of April 15, 1905, and limited his prayer for recovery to the present value of his contract at the date of its breach, and his commission on gross premiums to be received on business that had been written under said contract prior to its breach, the question of what he had been able to earn by personal service in other employment after his discharge was wholly immaterial, and was properly excluded, as it could throw no possible light on the question of the value of said contract at the date of its breach. The question of any claims to remuneration for personal service was not in this case at the time it was submitted to the jury. Wells v. Ins. Co., 99 Fed., 227; Pittsburg etc. v. Ashton, 39 Atl., 223; Cranmer v. Kohn, 64 N. W., 125; Insurance Co. v. Nexen, 84 Ind., 347, 43 Am. Dec., 91; Lewis v. Ins. Co., 61 Mo., 534; Hitchcock v. Supreme Tent, 100 Mich., 40; Dennis v. Maxfield, 10 Allen, 128; Mich. etc., Ins. Co. v. Coleman, 100 S. W., 122.

KEY, ASSOCIATE JUSTICE.—A. R. Roberts brought this suit against the Texas Life Insurance Company, seeking to recover damages for the breach of a written contract.

The defendant interposed an answer embracing a general demurrer, special exceptions, a general denial and certain special matters not necessary to be enumerated.

There was a jury trial which resulted in favor of the plaintiff for $7,500, and the defendant has appealed.

The plaintiff alleged in his petition that he was employed by the defendant for a period of ten years, and that the defendant had wrongfully discharged him before the expiration of the contract, and that, as a result of such wrongful discharge, he was entitled to recover certain specified damages. The contract for the breach of which plaintiff sought to recover, reads as follows:

"State of Texas,          }
   County of McLennan.  }

"This agreement, this the 15th day of April, 1905, by and between the Texas Life Insurance Company, Waco, Texas, hereinafter designated 'Company,' and Artemas R. Roberts, hereinafter designated 'Roberts,' witnesseth:

"The said Company hereby appoints said Roberts its Actuary and Superintendent of Agencies to perform the duties hereinafter required, and agrees to pay at the end of each month to said Roberts the sum of One Hundred Dollars as salary, also hotel bills, railroad fare and other traveling expenses of said Roberts when away from the Home Office of said Company, not to exceed One Hundred Dollars per month, also five percentum of all gross premium receipts of said Company as received on all accepted business done under this contract in the State of Texas on and after this date, except as follows: All premiums received from the policy known as the One Hundred Months Gold Bond heretofore or hereafter issued by said Company, and except any industrial health or accident policies which may be hereafter issued by said Company. The Company further agrees to pay the said Roberts as a commission the maximum rate paid any agent of the Company upon the business personally written by him and accepted by said Company for the first year, and on such business the five percent extra commission is not to be paid said Roberts for the first year.

"The said Roberts shall be the Actuary of said Company, and shall have general charge of the Actuary Department; he shall prepare or supervise the preparation of all rates, policy guarantees, rate books, policy forms, blank forms, agency literature, and such other forms and blanks for the use of said Company as may be necessary, and which shall be approved by the Board of Directors of said Company or its President and Secretary. The said Roberts shall calculate or supervise the calculation of reserve value of all policies, and shall supervise the making of such annual or semi-annual statements as may be required by all State and National governments. He shall perform or supervise the performance of such other duties as may be required of the Actuarial department and the department of Superintendent of Agencies by the Board of Directors, and he shall give his entire time to the business.

"The said Roberts shall be the Superintendent of Agencies of said

Company and shall have general charge of the Agency department and the agents of said Company, appointing such agents under such conditions as the Board of Directors of said Company may impose.

"This contract may be terminated by said Company in case said Roberts shall fail to produce, through the Agency force of said Company sufficient business to make the business written under this contract profitable to said Company, and a vote by its Board of Directors on this question shall be final, and they shall have the power to terminate this contract at any time they shall consider it for the best interest of the Company to do so. In case this contract is terminated from any cause whatsoever, the Company shall continue to pay monthly thereafter to said Roberts or heirs the five percentum above referred to on all Gross Premium receipts covered by this contract for the remaining unexpired period of ten years from this date.

"All Actuarial work shall be done at the Home Office of the Company. Should said Roberts die or become incapacitated to perform the duties herein prescribed this contract shall become null and void, save and except as to the payment of the five percent above provided for.

"This contract shall take effect from the 15th day of April, 1905, and unless terminated earlier as above provided shall continue in force for the period of ten years.

"In witness whereof the parties hereto have set their hands and seal in duplicate at Waco, McLennan County, Texas, this the 15th day of April, 1905.

"By W. D. Mayfield, President.
Attest: Jno. D. Mayfield, Secretary.
Artemas R. Roberts."

The plaintiff alleged and proved that on April 3d, 1906, the defendant discharged him. The plaintiff's suit was commenced September 20, 1906. The case went to trial January 28, 1907, and was concluded February 21, 1907. In its answer, among other things, the defendant alleged that the plaintiff had procured other and similar employment, from which he would receive as much or more compensation than he would have received under his contract with the defendant. At the trial the defendant offered to prove that on May 26, 1906, the plaintiff entered into a contract with an insurance company at Rome, Georgia, of a similar nature to his contract with the defendant, and under which he had received $3,000 for services rendered prior to September 20, 1906; that the contract referred to was for a long term of years and at a rate of compensation more remunerative than the one involved in this case.

The plaintiff objected to the testimony referred to as being immaterial and irrelevant to any issue then in the case. The trial court sustained the objection and that ruling is assigned as error. The case of Wells v. National Life Assn., 99 Fed. Rep., 222, is relied on by counsel for appellee in support of the ruling of the court. That case is the first case reported in 53 L. R. A., and is accompanied by a note embracing an elaborate discussion of loss of profits as an element of damages for breach of contract. In that case the trial

court sustained certain exceptions to the plaintiff's petition, and dismissed the case, and the correctness of those rulings is all that was considered by the appellate court. The question of offsetting damages by showing that the plaintiff had obtained other employment was not involved nor adverted to in the opinion. The petition alleged that the defendant, on June 6, 1894, had entered into a written contract with one Miller whereby it appointed him its manager for certain specified territory. The writing expressly provided that the contract might be assigned with the written consent of the company, and it was alleged that it had been so sold and transferred to the plaintiff Wells. By the terms of the contract it was Wells' duty, at his own expense, to solicit and procure applications of persons to become members of the company; to procure the appointment of agents, whose duty it should be to solicit applications; to forward all such applications to the home office of the company for approval or rejection; to receive policies and deliver the same, and to receive the first premium and to thoroughly inspect all business written by any agents appointed by him. It was made his duty to account for and pay over on demand all sums of money which he might receive as premiums, advances or otherwise, and all policies of insurance and other effects which he might receive on account of the company, whether such sums of money or other property were received by him or by any clerk, agent or other person employed by him. He agreed that during the continuance of the contract, which was for the period of ten years, he would devote his entire time and energies to the service therein mentioned, and would perform such other duties as should be required of him by the home officers of the Company in order to thoroughly develop and work the territory confided to his management. There were certain restrictions on his authority as general manager, not necessary to state. For his compensation he was to receive a specified percent of the original and of the new premiums charged on the different classes of insurance to be written by the company in his territory. It was expressly provided that he should receive no further remuneration for any services than as stated in the contract, and that he should not contract debts in the name of the company, unless specially authorized in writing, and that in consideration of the specified compensation he should pay any and all agency expenses, medical examination fees, and all license fees in the State in which he was to do business, together with the State, county and municipal taxes which might be required upon the first year's business or premium receipts. It was provided further that if he should neglect or refuse to thoroughly develop and work the territory allotted to him, then the company might employ other agents in any portion of the territory so neglected without otherwise ending the contract, and that he should have no claim on the business so effected by such other agent or agents so employed; that otherwise the company should not appoint other agents within his territory. Wells alleged in his petition that he had fully complied with all of the terms of his contract, and had expended money and incurred expenses amounting to $1,000, and that his personal services, devoted to the interests of the company in the performance of his duties for ten

months' time, were of the value of $2,500. He then set out in detail the volume of business which he alleged he would have secured for the company, and his percentage thereof as fixed by the contract. His petition contained some other allegations, which we deem it unnecessary to state here. It did not disclose or indicate that he had secured any other employment or that any reason existed for reducing the amount of his recovery on account of other remuneration to be received by him. In 53 L. R. A., 1, the result of that case in the appellate court is fairly stated in the syllabus:

"1. A claim for loss of anticipated profits may be joined with a claim for actual outlay and expenditures in a suit for damages for breach of a contract employing a general manager of an insurance company.

"2. Loss of anticipated profits may be included in a recovery for breach of a contract to employ plaintiff on commission as exclusive general agent of an insurance company for particular territory during a specified time, which may be estimated by considering the value of renewals on policies already written not shown by the company to have lapsed, and the probable future business as indicated by that actually done by the company through other agents after the breach, the respective facilities of the two for doing the work, the probable expense and the amount to be done.

"3. In a suit for breach of contract for exclusive employment as general agent of an insurance company, in which lost profits and expenditures made on the faith of the contract are both sought, the recovery must be confined to the latter claim, unless probable profits in excess of that amount are shown.

"4. Testimony of persons who have had actual experience in the transaction of insurance business, as to particulars and results of such business, may be received in an action seeking lost profits for breach of a contract for employment as general insurance agent."

Thus it will be seen that in that case the plaintiff had not only contracted to render his personal services, but had also agreed to and in fact had invested his own money in the enterprise, and therefore it was proper to designate his contemplated returns, over and above the amount he had and would have invested, as profits; and the author of the note which follows that case in 53 L. R. A., in order to preserve proper relevancy to the case, states in the beginning that his note deals with profits distinctly as such as consisting of net earnings, or the excess of receipts over expenditures, and that questions as to loss of rents or wages or income or compensation or property or bargains, etc., are excluded. In this case the contract between the parties and the suit for damages for its breach, are quite different from the contract and suit in that case. In this case the plaintiff was not required to and did not invest any money as expenses or otherwise in the business he was employed to assist in promoting. The only thing that he obligated himself to furnish was his personal services in the performance of certain specified duties, coupled with the agreement that he was to perform such other duties as might be required of the two departments with which he was to be connected. It also required him to devote his entire time to the business of his

employer. As compensation for the services which the plaintiff agreed to render, he was to receive from the defendant a salary or fixed sum of $100 per month, and a certain percentage of the gross receipts of the defendant from certain portions of its business; but it is not accurate to designate any part of his compensation as profits. Such compensation was no part of the defendant's profits, and he was entitled to it, whether the defendant made a profit or not. In fact, his compensation, both salary and commissions, would be a part of the defendant's expense account to be deducted from its gross income in order to determine how much profit it had made. Nor is it accurate to designate it a profit that the plaintiff was entitled to, because he was not required to and did not invest any money as expenses or otherwise in performance of the contract. Accurately speaking, everything that the plaintiff was entitled to under the contract would constitute nothing else than compensation for personal services to be rendered by the plaintiff. The fact that part of his remuneration was to consist of a certain percentage upon a portion of the defendant's income, does not change the fact that such percentage, as well as all of his other compensation, was to be earned by his personal services, and not by any investment or expenditure made by him. Hence it seems manifest that, when properly analysed, the contract belongs in that class denominated personal service or hiring contract. This being the case, does the contract belong to that class in which it is permissible to offset or reduce the amount of damages by showing that the plaintiff has, or by proper diligence could have, obtained other remunerative employment? And we think that question must be answered in the affirmative.

In determining the question it may not, perhaps, be necessary to determine whether or not, accurately speaking, the contract created the relation of master and servant, but if such necessity exists, abundant authority can be furnished in support of the proposition that it does. "The word 'servant' in our legal nomenclature, has a broad significance and embraces all persons of whatever rank or position who are in the employ and subject to the direction or control of another in any department of labor or business. Indeed, it may in most cases be said to be synonymous with employe." (Wood on Master & Servant, sec. 1; 26 Ency. Law, 966.)

In Singer Manfg. Co. v. Rahn, 132 U. S., 33 L. Ed., 440, the contract in its legal elements was quite similar to the one in this case. The company had employed Rahn to sell its sewing machines and had agreed to pay him therefor $5 for each acceptable sale made by him, and ten percent on the gross price realized from such sales. The company also agreed to pay him a collecting commission of ten percent on the amounts or balances due from customers having purchased machines from him. The company agreed to furnish him a wagon and he was to furnish the horse and harness, to be used exclusively in canvassing for the sale of the company's machines, and the general prosecution of its business, and he agreed to devote his entire time and best energies to the business of the company, and pay all expenses attending the same. It was further agreed that he

was employed under the direction of the company and under such rules and instructions as it or its manager might prescribe; and. it was stipulated that he was not to make use of the company's name in any manner whereby the public or any individual might be led to believe that the company was responsible for his actions. And the contract contained the further stipulation that if any special acts were required of Rahn, the power to perform the same would be specially delegated. It was further stipulated that if Rahn should sell any other than the machines furnished him by the Singer Company, it should operate as a forfeiture of any commissions that he might be entitled to under the contract. In that case the plaintiff sued the Singer Manufacturing Company for damages for personal injuries inflicted upon her by Rahn while engaged in the performance of his duties under the contract referred to, and the company contended that it was not liable, because the relation of master and servant did not exist between it and Rahn, the contention being that Rahn was an independent contractor.

The Supreme Court of the United States, by unanimous opinion delivered by Mr. Justice Gray, overruled that contention and held that the contract created the relation of master and servant, and that the company was liable. The court held that the relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done as well as the result to be accomplished, or, in other words, not only what shall be done, but how it shall be done. It will be noticed that in that case some features of the contract· furnished an excuse for contending that Rahn was not a servant of the company, because while the company furnished the machines and the wagon, Rahn was to furnish the horse and harness, and pay all expenses incurred by him in attending to the business; but in the case at bar the plaintiff Roberts was to furnish nothing but his personal services. By the terms of the contract the company retained control over the work to be performed by him, which is generally conceded to be the controlling test in determining whether or not the relation of master and servant exists. (Wallace v. Southern Cotton Oil Co., 91 Texas, 18.) But at any rate, in the case at bar, the plaintiff was neither a partner nor an independent contractor, and he was an employe, engaged in a service of no greater dignity than that which was contracted to be performed in Kramer v. Wolf Cigar Stores Co., 99 Texas, 597. The contract in that case read as follows: "This memorandum of an agreement witnesses: That Irvin L. Kramer agrees to faithfully and diligently act as general manager of the Dallas stores of the Union Cigar Stores Company, with headquarters at Dallas, performing such duties as are usually entailed upon a general manager under like circumstances, for the term of one year, beginning on the 8th day of September, 1902; that in consideration of said services the said Union Cigar Stores Company agrees to pay to the said Irvin L. Kramer monthly, the sum of two hundred and fifty dollars ($250), due and payable on the seventh day of each month of said term of service. It is hereby further agreed that at the expiration of the one year herein provided for, at the option of the said Irvin L. Kramer, this agree-

ment to be extended through an additional term of one year, which option is to be exercised within thirty days prior to the expiration of the first year. Witness our hands this 9th day of September, 1902. Union Cigar Stores Co., I. L. Wolf, President. Irvin L. Kramer."

It will be observed that the contract in that case did not, in terms, reserve to the employer any right of control over the employe, as does the contract in the case at bar. As to the question now under consideration, the Supreme Court, in an opinion by Mr. Justice Williams, said:

"The appellee (the present plaintiff in error) presented cross-assignments in the Court of Civil Appeals upon which it is proper that we should pass. They have reference to the rules of law to be given to the jury to govern in determining what, if any, deductions should be made from the contract price for plaintiff's services in case he should be found entitled to recover as for a breach of the contract. The evidence indicates that plaintiff made no effort to secure any other employment after his discharge and before he went into business for himself, for the reason, as he states, that he knew that the attempt to secure employment of the same character as that which he had of defendant, would be useless, as there were none such open in Dallas. The evidence also tended to show that out of his business he had made no profit during the months for which his service with defendant should have lasted. The rules of law applicable to this state of facts may be sufficiently stated without following the cross-assignments.

"The plaintiff, if he was wrongfully discharged, was bound only to use reasonable diligence to get other employment and to reduce his loss as far as could thus be done. Of course, if no other employment could have been obtained by reasonable diligence, proof of that fact would meet every requirement of the law. With reference to the character of employment to be considered, the opinion of Judge Henry in Simon v. Allen, 76 Texas, 399, furnishes the rule applicable. If by reasonable diligence and within a reasonable time he could have secured another position of substantially the same character and grade as that which he had held with defendant, such amount as could have been earned therein during the entire term of service should be deducted from the contract price. If it is true, as he claims, that he could not thus have secured such a position, and he knew that fact from the time of his discharge, then, under the second rule laid down in the case referred to, it became his duty to use reasonable diligence to secure other employment for which he was fitted, and in that case the amount he should have earned in this way during the term of service should be the deduction. Should it be found that no employment of the defined character could have been had by the diligence required, then and then only, the question would arise as to the deduction to be made on account of plaintiff's business.

"It is undoubtedly true that if, during the term fixed by the contract the plaintiff obtained for himself benefits of pecuniary character by employing in his own business the services which would

have been due to the defendant under the contract, his recovery should be diminished to the extent of such acquisition. The trial court fixed the measure of this as 'the reasonable value of his services to himself in the business.' His counsel contends that the measure should be the profits realized in money from the business. We are of the opinion that the charge is correct, but that under the peculiar facts of this case, it needs some explanation to avoid misunderstanding. The value of his services to himself is not to be understood as meaning what it would have cost to employ him or one like him, but the pecuniary value of that which his services yielded him in the business. This might consist of something more than profits actually received in money. It might happen that while no such profits had been received during the months through which the service with defendant should have extended, yet that appreciable value had been added to the business by his efforts; and it is this consideration from which we conclude that the measure suggested by plaintiff's counsel might be inadequate for some contingencies, and that of the court, when understood as explained, more correct. Van Winkle v. Satterfield, 58 Ark., 617; Gates v. School Dist., 57 Ark., 370; Jaffray v. King, 34 Md., 222; Huntington v. Ogdensburgh & L. C. Ry. Co., 33 How. Pr., 416; Toplitz v. Ullman, 2 N. Y. Supp., 863."

But it is insisted on behalf of appellee Roberts that a waiver filed by him in this case before the excluded testimony was offered, rendered that testimony immaterial. That position is untenable. The waiver referred to abandoned certain elements of damages set up in the petition, but left the plaintiff contending that he was entitled to recover some damages on account of the alleged breach of the contract. Such being the case, the defendant was entitled to introduce any testimony tending to show that the plaintiff made other arrangements by which he had received or probably would receive remuneration for his services. The case of Kramer v. Wolf Cigar Stores Co., already cited, and other cases therein referred to, indicate the rules of law applicable in determining the measure of damages in cases of this kind.

We also hold that the trial court committed error in excluding the expense accounts submitted to the board of directors of the defendant, from the time the plaintiff entered its employment until the time of his discharge. That testimony was material upon the question of good faith on the part of the board of directors in terminating the contract between the parties.

Appellant contends that, by the terms of the contract, it had the absolute right to discharge the plaintiff at any time, either with or without cause. In that regard the trial court seems to have considered the contract as ambiguous, and submitted to the jury the question whether or not it was the intention of the parties that the defendant should have such right. We have reached the conclusion that the contract is uncertain and ambiguous in that respect, and that the court pursued the proper course. Appellant's board of directors passed a resolution declaring that the business produced by appellee through the agency force of the company was not sufficient to make

the business written under the contract profitable to the company, and assigned that as the reason for discharging appellee. Counsel for appellant strenuously urge the contention that, by the terms of the contract, the action of the board of directors in that regard was final, and that appellee should not be permitted to allege and prove that such action was fraudulent and not in good faith. We overrule that contention and sustain the action of the trial court in hearing testimony and submitting to the jury the question of good faith on the part of the board of directors in taking the action referred to. (Sanger v. Slayden, 7 Texas Civ. App., 614; Fuller v. Downing, 104 N. Y. Supp., 993; Rhodes-Haverty Furniture Co. v. Frazier, 55 S. W., 192; Grinnell v. Kiralfy, 55 Hun, 422; Smith v. Robson, 148 N. Y., 252.)

The number of assignments presented in appellant's brief and the number of questions raised under each assignment, preclude separate and distinct consideration in this opinion of all the ·questions that have been presented in this court. We believe what has already been said will dispose of the controlling questions in the case without further discussion by this court.

For the errors pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*