NORTHWESTERN NATIONAL LIFE IN-
SURANCE COMPANY, Appellant,

v.

Vivian S. BLACK, Appellee.

No. 7567.

Court of Civil Appeals of Texas.

Texarkana.

Sept. 29, 1964.

Rehearing Denied Oct. 20, 1964.

Victor Hlavinka, Atchley, Russell, Hutchinson & Waldrop, Texarkana, for appellant.

Robert L. Dalby, Texarkana, for appellee.

FANNING, Justice.

Appellant insurance company issued to Texarkana Water & Sewer Systems a group life insurance policy upon the full-time employees of said employer. The policy was dated October 15, 1956, and a certificate was issued as evidence that, subject to policy terms and provisions, Mr. E. C. Black was insured by the policy.

Provisions in the said group life insurance policy relative to definition of the term "employees" and the "eligibility of employees" are as follows:

"1. DEFINITION OF THE TERM 'EMPLOYEES':

"The term 'employees' as used herein means all full-time employees employed and compensated by the employer.

"2. ELIGIBILITY OF EMPLOYEES:

"All present employees

are each eligible for insurance hereunder on the effective date here. ~~All other present employees and~~ New employees shall be eligible for insurance hereunder on the 1st day of the policy month coinciding with or next following the date of commencing continuous service with the employer."

Mr. Black died Jan. 24, 1960. Proof of death was filed, payment of the policy's $1,000.00 death benefit was refused, and all insurance premiums theretofore paid on members of the Board of Public Utilities of the City of Texarkana, Arkansas, were refunded to Texarkana Water & Sewer Systems, and a refund of premiums paid upon E. C. Black was tendered to his widow and policy beneficiary, Mrs. Vivian C. Black, and such premiums were later tendered into the registry of the court after Mrs. Black

filed suit upon the policy. Plaintiff in her suit sought judgment for the amount of the policy, 12% penalty, attorney fee, interest, costs, etc.

The trial court submitted three special issues to the jury. The findings of the jury in responses were in effect, to-wit:

(Special Issue No. 1) The deceased, E. C. Black, from Oct. 15, 1956, to the date of his death was a full-time employee of the Texarkana Water & Sewer Systems;

(Special Issue No. 2). Northwestern National Life Insurance Company accepted the premiums on behalf of E. C. Black's certificate of insurance with the knowledge of the type and character of his employment; and (Special Issue No. 3) the deceased, E. C. Black, relied upon the company's acceptance of the premiums as acknowledgment on the part of the company that the insurance policy was applicable to him.

█ Appellant insurance company did not file a motion for new trial and review of alleged error is confined to the grounds asserted for judgment in appellant's unsuccessful motion for judgment notwithstanding the verdict. Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887; Rule 324, Vernon's Ann.Rules of Civil Procedure. The motion requested the trial court to disregard the jury's answers to the said three special issues mentioned. The principal question for review is whether or not there is evidence of probative force to support the jury's findings on these special issues.

The case was once before this court and the cause was reversed and remanded for fuller development. Northwestern National Life Insurance Company v. Black, Tex.Civ. App., 362 S.W.2d 141, wr. ref., n. r. e. (1962). In the first trial of this cause the Arkansas statutes referred to in the Ordinance appointing Mr. Black to the Board of Public Utilities of Texarkana, Arkansas (B–810) were not placed in evidence.

Ordinance B–810 of the City of Texarkana, Arkansas, was introduced in evidence in the first of trial in this cause and also in the second trial. We quote the following excerpt from said ordinance:

"Section 13. That there is hereby created a water and sewer committee, to be known as the 'Board of Public Utilities' of said City, to have and exercise the powers and perform the duties as by Section 9978, 9979, 10022, 10023, and 10024 of Pope's Digest of the Statutes of Arkansas provided the initial members of which shall consist of: Earl C. Black, Roy W. Davis, M. C. Jacobson.

"All such powers exercised and duties performed by said Board of Public Utilities shall be prescribed by ordinance or resolution of the Council of said City subject to applicable laws and the covenants and undertakings on behalf of said City as set forth in this ordinance."

The Arkansas statutes referred to in said ordinance were placed in evidence in the second trial from which this appeal results.

The Boards of Public Utilities of the Cities of Texarkana, Arkansas, and Texarkana, Texas, operated the water and sewer systems of the adjoining municipalities under the name of Texarkana Water & Sewer Systems. The Boards of the respective cities met jointly and Mr. Black served as Chairman of the group at one time. The Board laid down operating policy, recommended rates to the Council, etc. Management of operations was the prerogative of the general manager, under him the office manager was authorized to direct office personnel and procedure. The Board employees were classified and their hours of employment and rates of pay were specially scheduled. Of these employees, possibly excepting the general manager and office manager or casual labor hired on an hourly basis, all classifications were on a forty hour week basis, and considered full-time employees. Board members were not in-

cluded in any classification of employees maintained by the Board, and were not subject to the direction of any of the admitted employees of the Board or system. No withholding taxes were taken from the $20.00 per month compensation of Mr. Black or of any of the other Board members.

The above referred to ordinance of the City of Texarkana, Arkansas, appointed Mr. Black as a member of the Board of Public Utilities of the City of Texarkana, Arkansas. The ordinance and the Arkansas statutes referred to therein, all introduced in evidence on the second trial from which this appeal arises, as well as all the evidence adduced, have been carefully examined and considered, and it is held that Mr. Black occupied, at all times pertinent hereto, the status of a public officer and was neither an employee nor a full-time employee.

■ The proper rule of construction to be applied in this cause to determine the meaning of the terms "employee" and "full-time employee" is the rule that language used in insurance policies is given its usual and popular meaning unless it is ambiguous or it is shown that the parties intended it to have a special meaning. Insurance 32 Tex. Jur. (2) 115, Sec. 57.

Public officer has been variously defined, and in 67 C.J.S. Officers § 2, pp. 101–102, the term is referred to:

"* * * an individual who has been appointed or elected in a manner prescribed by law, who has a designation or title given him by law, and who exercises the functions concerning the public assigned to him by law; a person whose duty it is to perform an agency for the state; an officer who discharges any duty in the discharge of which the public is interested or who is invested with the authority and is required to perform the duties of a public office; one who has some duty to perform concerning the public."

Knox et al. v. Johnson, Tex.Civ.App., 141 S.W.2d 698, writ refused (1940), in discussing the definition of a public officer cites with approval the rule laid down in 53 A.L.R. 595, as follows:

" 'It may be stated, as a general rule deducible from the cases discussing the question, that a position is a public office when it is created by law, with duties cast on the incumbent which involve an exercise of some portion of the sovereign power and in the performance of which the public is concerned, and which also are continuing in their nature and not occasional or intermittent; while a public employment, on the other hand, is a position which lacks one or more of the foregoing elements.' "

The rule laid down in 53 A.L.R. 595 is also in harmony with the definition of a public officer given by the Supreme Court of Texas in Kimbrough v. Barnett, 93 Tex. 301, 55 S.W. 120 (1900).

■ The determining factor which distinguishes a public officer from an employee is whether any sovereign function of the government is conferred upon the individual to be exercised by him for the public largely independent of the control of others. Aldine Independent School District v. Standley, 154 Tex. 547, 280 S.W.2d 578 (1955).

■ An employee is one who works for an employer; a person working for a salary or a wage. The word is applied to anyone so working, but usually only to clerks, workmen, laborers, etc., and but rarely to officers of a government or corporation. United States v. Schlierholz, D.C., 137 F. 616, 624.

■ The relation of employer and employee is contractual. Mercury Life & Health Company v. DeLeon, Tex.Civ.App., 314 S.W.2d 402, wr. ref., n. r. e. (1958). It may be oral or written, express or implied. C. C. Slaughter Cattle Company v. Pas-

trana, Tex.Civ.App., 217 S.W. 749, wr. dism. (1920). The words "servant" and "employee" are in most cases practically synonymous. Texas Life Insurance Company v. Roberts, 55 Tex.Civ.App. 217, 119 S.W. 926, no writ, (1909). Also the word "employee" in its general significance is governed by the same rules whether a claim lies within the field of common law liability or arises out of the Workmen's Compensation Statutes. See Harris v. Cochran et al., Tex.Civ.App., 288 S.W.2d 814, wr. ref., n. r. e. (1956), wherein it was also stated:

> "A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master."

In Security Union Ins. Co. v. McLeod, Tex.Com.App., 36 S.W.2d 449, 451 (1931), (a workmen's compensation case), it was stated in part as follows:

> "To constitute one an employee * * * there must exist between the parties the relation of master and servant in the broad sense that the one has the right of ultimate control and direction over the other.
>
> "The relation of master and servant exists, where the master retains or exercises the power of control in directing, not merely the end sought to be accomplished, but as well the means and details of its accomplishment; not only what shall be done, but how it shall be done. Shannon v. Western Indemnity Co. (Tex.Com.App.) 257 S.W. 522, 523; Wallace v. S. C. O. [Southern Cotton Oil] Co., 91 Tex. 18, 40 S.W. 399; Southern Surety Co. v. Shoemake (Tex.Com.App.) 24 S.W.2d 7."

■ Under the evidence the Texarkana Water & Sewer Systems did not control Mr. Black; instead the Board of which Mr. Black was a member and for some time the Chairman, was in ultimate control of the Systems. Mr. Black's physical conduct, as a Board member and Chairman, was not controlled by the Texarkana Water & Sewer Systems. One of the functions of the Board, as the governing body of the systems, was to make contracts of employment. Mr. Black could not at the same time be both an employer and an employee, as it takes two parties to make a contract of hiring. Southern Surety Company v. Inabnit et al., Tex.Com.App., 119 Tex. 67, 24 S.W.2d 375 (1930). Mr. Black, of course, was not hired by the Systems; he was appointed by a City Ordinance as a member of the Board which governed the Systems.

■ It is clear that the function performed by Mr. Black was exercised by him for the benefit of the public, and his exercise of that function was largely independent of the control of others, except that of course he worked in cooperation with the other Board members. Certainly to the extent that the ordinance appointing Mr. Black to his office and the Arkansas statutes under which the ordinance was passed describe his duties and responsibilities as a Board member, such ordinance and statutes controlled Mr. Black's performance of his duties as a member of the Board and as a public officer. Thus it seems clear that the Texarkana Water & Sewer Systems did not control Mr. Black, one of its governing public officers, and consequently, Mr. Black was not an employee of said systems.

It is held that there is no evidence of probative force to support any finding that Mr. Black was an employee of the Texarkana Water & Sewer Systems.

■ It is furthermore thought that if Mr. Black could in any event be held an employee, he was not a "full-time employee" of the Texarkana Water & Sewer Systems. Apart from the assumption that Mr. Black was "on call" twenty-four hours a day, it is not seriously contended that the work done or the duties performed by him employed his full time. The fact is the Board

met regularly once a month with two or three meetings in addition. Neither the evidence nor reasonable inferences and deductions therefrom proves that Mr. Black devoted more than a small portion of his time to the performance of Board duties. The concept of being "on call" twenty-four hours daily confuses responsibility as a Board member with the daily performance of a Board member's duties. Membership on the Board carried with it a responsibility for operation of the system; this responsibility was continuous, existing at all times. However, responsibility and the willingness to assume it is quite different and a thing apart from actual employment. A Board member's responsibility is always with him, but his duty to act in the discharge of his obligation as a Board member occurred only at the regular or called meetings of the Board. Using any adequate definition of the term "full-time employee", the evidence, when given its most favorable meaning, does not show that Mr. Black was a full-time employee of the Systems.

■ The judgment of the trial court can not be supported upon the theories of waiver and estoppel.

In the first place there is no evidence of probative force in the record to show that any statements that may have been made by the soliciting agent of appellant insurance company was to have been either authorized, known or ratified by the appellant insurance company. In this connection, see Traders & General Insurance Company v. Lange, Tex.Civ.App., 354 S.W.2d 178, wr. ref., n. r. e. (1962), and authorities cited therein, wherein it was stated in part as follows:

"Regardless of what Neil Cooper said, or did, there is no evidence in the record to show that his principal, the appellant insurance company, did any act or made any omission which would indicate that the principal knew about Cooper's representations or acts, or ever ratified such acts, and under this record there is no pertinent act or omission traceable directly to the principal."

In the second place, if Mr. Black was neither an "employee" nor a "full-time employee" he was not covered by the basic terms of the policy, and to apply the doctrine of waiver and estoppel to the situation at bar would in effect make the contract of insurance cover a loss it never covered by its terms and would create a liability not created by the contract and never assumed by the appellant insurance company under the terms of the policy, and of course this would not be correct. In this connection see Washington National Insurance Company v. Craddock, Tex.Com.App., 130 Tex. 251, 109 S.W.2d 165 (1937), 113 A.L.R. 854, wherein it was further stated:

"* * * In other words, by invoking the doctrine of estoppel and waiver it is sought to bring into existence a contract not made by the parties, to create a liability contrary to the express provisions of the contract the parties did make."

Also in this connection see Great American Reserve Insurance Company v. Mitchell, Tex.Civ.App., 335 S.W.2d 707, writ refused (1960) wherein it was stated in part as follows:

"Plaintiff's claim and recovery run directly contrary to the settled Texas law of waiver and estoppel with respect to risks designated in an insurance policy. Waiver and estoppel may operate to avoid a forfeiture of a policy, but they have consistently been denied operative force to change, re-write and enlarge the risks covered by a policy. In other words, waiver and estoppel can not create a new and different contract with respect to risks covered by the policy. This has been the settled law of Texas since the decision in Washington Nat. Ins. Co. v. Craddock, 130 Tex. 251, 109 S.W.2d 165, 113 A.L.R. 854. See also, Vaught v. Texas Employers' Ins. Ass'n, Tex.Civ.App.,

257 S.W.2d 445; Powell v. American Casualty & Life Co., Tex.Civ.App., 250 S.W.2d 744; Massachusetts Bonding & Insurance Co. v. Dallas Steam Laundry and Dye Works, Tex.Civ.App., 85 S.W.2d 937; C. E. Carnes & Co. v. Employers' Liability Assur. Corporation, 5 Cir., 101 F.2d 739; 29 Am.Jur., Insurance, § 1135; 163 A.L.R. 691; 113 A.L.R. 857. In Hunter v. Jefferson Standard Life Insurance Co., 241 N.C. 593, 86 S.E.2d 78, the general rule is specifically applied to the continued acceptance of premiums after insured became overage under a policy risk. There was an acceptance of premiums for more than four years after the policy termination date, yet the Court adhered to the general rule, citing a multitude of precedents.

"Not every jurisdiction adheres to the rule followed in Texas, though it is the rule of the majority * * * The point, however, is not an open one in Texas. * * *.

"The judgment is reversed and rendered that all relief be denied the plaintiff other than the recovery of premiums paid after the termination of the insurance."

It is concluded that this case has now been fully developed and that there is no evidence of probative force in the record to support the jury's findings upon the three special issues submitted to them; that Mr. Black was neither an "employee" nor a "full-time employee" of Texarkana Water & Sewer Systems, and further that the judgment of the trial court can not be supported on the theories of estoppel and waiver.

The judgment of the trial court is reversed and judgment is here rendered that all relief be denied the plaintiff-appellee other than the recovery of premiums heretofore paid into the registry of the court by appellant.

Reversed and rendered.

DAVIS, Justice.

I dissent. This is a suit by plaintiff-appellee, Vivian S. Black, against defendant-appellant, Northwestern Life Insurance Company on a certificate of life insurance insuring the life of E. C. Black. Appellant sold the Texarkana Water & Sewer Systems of Texarkana, Arkansas, Texas (hereinafter referred as Systems) a group life insurance policy insuring the employees. No one saw the group policy until after the death of E. C. Black. Prior to buying the group life policy from the appellant, the employees were insured under a group life policy with another company. The members of the committee of the Board of Public Utilities of the Systems (hereinafter referred to as the Committee) and the attorney were not insured. Appellant agreed to insure the Committee and the attorney; therefore, it was decided to purchase the group life policy from the appellant.

At the time they made the trade for the group life policy, an agent of the appellant had group enrollment cards that he submitted to each employee and the attorney, and then issued certificate of life insurance to each of them. E. C. Black signed a group enrollment card as an "employee". The appellant offered the group enrollment cards in evidence without any limitation whatsoever. There was no pleading of fraud or mistake, and the appellant is bound by every statement that is made by the enrollment card. Lock v. Morris et al., 287 S.W.2d 500, wr. ref., n. r. e.

Appellee offered in evidence two requests for admissions, and the appellants' admissions thereto, which read as follows:

"*REQUEST NO. 19.* 'That during the period of October 15, 1956, until after January 24, 1960, the date of the advised death of E. C. Black, the defendant never at any time questioned the fact that the said E. C. Black was an employee of the Texarkana Water & Sewer Systems and insured as such employee under said Group Policy No.

GL–2699 and Certificate No. 7 issued thereunder.

"*DEFENDANT'S ANSWER*: 'Defendant admits the facts stated in Request No. 19.

"*REQUEST NO. 20.* 'That during the period of October 15, 1956, until after January 24, 1960, the advised date of death of E. C. Black, the defendant never at any time questioned the fact that any member of the Board of Directors of the Texarkana Water & Sewer Systems, or the attorney for same, to whom defendant issued certificates of life insurance under its Group Policy No. GL–2699, were employees of the Texarkana Water & Sewer Systems and insured under said Group Policy No. GL–2699.

"*DEFENDANT'S ANSWER*: 'Defendant admits the facts stated in Request No. 20.' "

The case was tried before a jury. The jury found that E. C. Black was a "full-time employee". Under the record in the case, there was no need to submit any such issue because of the certificate of life insurance that was issued to Mr. Black on the date the group life policy was apparently issued. The jury found that the appellant accepted the premiums on the certificate of life insurance with the knowledge of the type and character of Mr. Black's employment. The jury further found that Mr. Black relied upon the acceptance of the premiums and the acknowledgment on the part of the appellant that the certificate of life insurance was applicable to him. The evidence is sufficient to support such findings. Appellant admitted in the trial of the case that it had accepted the premiums for three years and three months, (until Mr. Black's death), and there was no need to submit such an issue.

Appellant did not file a motion for new trial. It did, however, file a motion for judgment notwithstanding the jury verdict. Appellant brings forward 16 points of error. In the points of error, it takes the position that Mr. Black was not a "full-time employee". The appellee brings forward a cross-assignment of error in which she says the appellant waived any right to cancel the policy and was estopped to assert that Mr. Black was not an insured employee. Under the evidence in the case, Mr. Black was insured under the certificate of life insurance. There is no evidence in the record that E. C. Black ever saw the group life policy. He was issued a certificate of life insurance in which he was insured as an employee. The attorney for the Systems did not see the group life policy until after the death of Mr. Black, which was apparently the first time anyone ever saw the provision of the group life policy.

E. C. Black died January 24, 1960. Appellant issued the notice of cancellation as of February 1, 1960, after the loss had occurred. 32 T.J.2d 167–169, Secs. 87, 88, and 89. Mr. Black was led to believe that he had a valid certificate of life insurance. They had paid the monthly premiums for three years and three months. It was stipulated that the payments were made and accepted. They did not attempt to deny that they had issued the life insurance certificate, but they are denying liability on the group policy. Having admitted that they issued the certificate of life insurance and received the premiums they can not now deny liability thereunder. Georgia Casualty Co. v. Ginn, Tex.Civ.App., 272 S.W. 601, dism., w. o. j. Since the appellee retained the policy for several years and paid the premiums thereon the certificate of life insurance was binding on the insurer. 32 T.J.2d 61, Sec. 26; Sublett v. World Ins. Co., Tex.Civ. App., 224 S.W.2d 288, n. w. h.

It seems that there is a slight difference between "waiver" and "estoppel". A waiver is stated to be the intentional relinquishment of a known right requiring a consideration. Estoppel is considered to arise from a course of conduct lulling the insured into a false security. However, such would be the case under the certificate of life insurance that was issued by the agent to Mr.

Black and which he paid a valid consideration for, for 3 years and 3 months. 29 A.L.R.2d 636–654; 29 Am.Juris. 975, Sec. 1921; 1 Appleman Insurance Law and Practice, p. 44, Sec. 46; 32 T.J.2d 408–416, Secs. 243–246; Springfield Fire & Marine Ins. Co. v. Brown, Tex.Civ.App., 13 S.W.2d 916, N.W.H.; Austin Fire Ins. Co. v. Polemanakos, Tex.Com.App., 207 S.W. 922; The Maccabees v. Helton, et al., Tex.Civ.App., 70 S.W.2d 354, E.R.; Southern Underwriters v. Jones, Tex.Civ.App., 13 S.W.2d 435, E.R.

An employee in a group life policy is construed in a different manner than under Workmen's Compensation law, or labor law. Employment is defined as " 'Employment' means act of *employing,* state of being *employed,* that which *engages or occupies,* that which *consumes time* or *attention, office* or *post of business, service,* or *occupation".* (Emphasis added). Davis v. Lincoln County, 117 Neb. 148, 219 N.W. 899.

. It is hard to understand how the majority hold that Mr. Black was not an employee or a full-time employee of the Systems. He was appointed on the Committee as an employee, with the right to be removed "with or without cause". Under the appointment, Mr. Black was paid a monthly salary by the Systems. The Committee had a regular monthly meeting, many called meetings, and Mr. Black went to the office almost every day to sign checks. *He was on call twenty-four hours per day.* He was as much an employee of the Systems as the President of a bank is an employee of the bank. He was as much an employee of the Systems as a school superintendent of an independent School district is an employee of the school district. He was as certain an employee of the Systems as a man by the name of Worthman was an employee of Northwestern Fuel Company as cited in Equitable Life Assur. Soc. of United States v. Worthman, 7 Cir., 67 F.2d 721. In that case, Mr. Worthman was an assistant superintendent. The issue before the court and the jury was whether or not Mr. Worthman was a full-time employee, for full pay, from July 1, 1930, to Sept. 16, 1930.

The evidence showed that he did not do any labor at all, but in his position as Assistant Superintendent he directed the employees in doing their work. He did not go to the office but remained at home. He was visited by various employees who took up the matter of the employer's business. He was subject to call at any time. The court had this to say:

"In the case of such an employee, what might reasonably be considered as *full-time service depends largely upon the relations and transactions between employer and employee. It is not essential to full-time employment that such an employee be regularly and continuously at a particular place, such as the employer's office.* He might at his own home render such advisory and supervisory service as is deemed by the employer to be, and in fact was, a full-time service for the time being. *This could have been by conference and consultation with other officers of the employer, and to the employer's entire satisfaction.* In this connection, and as bearing on the quantum of the service rendered, the jury may have considered the fact that, during all the time in question, *the employer saw fit regularly to pay Worthman his full salary."* (Emphasis added).

Mr. Black drew his full salary during the entire life of the Group Policy, and the certificate of life insurance.

A full-time employee is described in Bakkensen v. John Hancock Mutual Life Insurance Company, 222 Or. 484, 353 P.2d 558, as follows:

"Since only full-time employees were eligible for insurance if covered by a union agreement and since plaintiff was subject to such an agreement, we now consider the question of whether or not plaintiff was a full-time employee.

It appears that plaintiff was at all times required to be available for work even though his services might not be required. In the case of Harlan v. Washington Nat. Ins. Co., 388 Pa. 88, 130 A. 2d 140, 143, wherein the question was whether or not a seasonal or transitory employee was a full-time employee within the meaning of that term as contained in a group policy of life insurance, it was stated:

" 'Full time employment does not mean full time pay. It means being available for full employment; and full employment does not mean a hand at the helm throughout the entire voyage; it means standing by to take over when the exigencies of the passage required the application of one's skill acquired over many journeys of the past.'

"We adopt this definition with reference to this case and, therefore, hold that since plaintiff was required to be available for work during the whole term of his employment, he was in fact a full-time employee."

In deciding whether Bakkensen was a full-time employee under the terms of the policy the court went on to say:

"It is our opinion that the term 'schedule' was used here in the sense that it referred to projected operations. By that we mean not what he did do but *what he was required to do under his contract of employment.*" (Emphasis added)

In 1 Appleman, Insurance Law and Practice, pp. 41-42, Sec. 44, we find the following: "It has been held, however, that a man need not be physically present at the usual place or times of employment in order to qualify; that if he is subject to call or duty at all times and receives his full pay, he remains a proper person insured." Thompson v. Pacific Mills, 141 S.C. 303, 139 S.E. 619, 55 A.L.R. 1237.

According to the evidence in the case, Mr. Black was an employee of the Systems, and did everything that was required of him under the contract of employment. Harlan v. Washington National Ins. Co., 388 Pa. 88, 130 A.2d 140.

The following is copied in this opinion for the purpose of showing that the City Council of Texarkana, Arkansas, intended to employ E. C. Black as an employee of the Systems. And to further show that they could remove him, with or without cause. As a matter of fact, all of the Ordinances and statutes were offered in evidence by the appellant. The adoption of the rules and regulations were offered in evidence by the appellee. Appellant offered in evidence the following resolution:

"ORDINANCE No. B–810

"AN ORDINANCE granting to the Board of Public Utilities authority for control and management of the municipal water system, and amending Section 13 of the Ordinance, dated July 14, 1948, providing for the purchasing of the water works system of the City of Texarkana, Arkansas, and the issuance of revenue bonds.

\*　　\*　　\*　　\*　　\*　　\*

"BE IT AND IT IS HEREBY ORDAINED by the City Council of the City of Texarkana, Arkansas, that Section 13 of the Ordinance dated the 14th day of July, 1948, and providing for the purchasing of the water works system and the improvement, enlargement, betterment and extension of said water works system and the existing municipal sewer system and for the issuance of the revenue bonds shall be and is amended to read as follows:

" '*Section 13.* That there is hereby created a water and sewer committee, to be known as the "Board of Public Utilities" of said city, to have and exercise the powers and perform the duties as by Sec. 9978, 9979, 10022, 10023

and 10024 of Pope's Digest of the Statutes of Arkansas provided the initial members ·of which shall consist of: Earl C. Black, Roy W. Davis, M. C. Jacobson.

" 'All such powers exercised and duties performed by said Board of Public Utilities shall be prescribed by ordinance or resolution of the Council of said City subject to applicable laws and the covenants and undertakings on behalf of said City as set forth in this ordinance.'

"It is hereby ascertained and declared that the Board of Public Utilities be and is vested with these additional powers set out herein in the management of the municipal water works in order to preserve the health and welfare of the inhabitants of said City, and it is therefore declared that an emergency exists requiring this ordinance to take effect and be in force from and after its adoption for the preservation of the public peace, health and safety, and it is so ordained."

Appellant offered in evidence an "Appointment of Sewer Committee—Removal —Vacancies", which reads as follows:

"The construction, acquisition, improvement, equipment, custody, operation and maintenance of any such works for the collection, treatment or disposal of sewage and the collection of revenue therefrom for the service rendered thereby, shall be effected and supervised by a Committee to be designated for such purpose by the Municipal Council; which Committee, however, will act under the control of the Council to such extent as may be provided in the ordinance or resolution appointing the Committee. The Council may remove any member of said Committee with or without cause and may appoint any substitute members in case of death, removal or resignation. Said Committee will hereafter be called the Sewer Committee. The Council may appoint one Sewer Committee to handle all municipal sewer projects, or it may entrust each project to a separate committee."

Appellant then offered in evidence the "Duties and Power of Sewer committee," which reads as follows:

"The Sewer Committee shall have power to take all steps and proceedings and to make and enter into all contracts or agreements necessary or incidental to the performance of its duties and the execution of its powers under this act (Sections 19–4101—19–4122); provided, that any contract relating to the financing of the acquisition or construction of any such works, or any trust indenture as hereinafter provided for, shall be approved by the Municipal Council before the same shall be effective. The Sewer Committee may employ engineers, architects, inspectors, superintendent, manager, collectors, attorneys, and such other employees as in its judgment may be necessary in the execution of its powers and duties, and may fix their compensation, all of whom shall do such work as the Committee shall direct. All such compensation and all expenses and liabilities incurred in carrying out the provisions of this act shall be paid solely from funds provided under the authority of this act, and the Sewer Committee shall not exercise or carry out any authority or power herein given it so as to bind said Sewer Committee or said city or town beyond the extent to which money shall have been or may be provided under the authority of this act. No contract or agreement with any contractor or contractors for labor and/or material, exceeding in amount the sum of one thousand dollars ($1,000.00), shall be made without advertising for bids, which bids shall be publicly opened and award made to the best bidder, with power

in the Sewer Committee to reject any or all bids. After the construction, installation, and completion of the works or the acquisition thereof, the Sewer Committee shall operate, manage and control the same and may order and complete any extensions, betterments and improvements of and to the works that it may deem expedient, if funds therefor be available or are made available as provided in this act, and shall establish rules and regulations for the use and operation of the works, and of other sewers and drains connected therewith so far as they may effect the operation of such works, and do all things necessary or expedient for the successful operation thereof. All public ways or public works damaged or destroyed by the Sewer Committee in carrying out its authority under this act shall be restored or repaired by the Committee and placed in their original condition, as nearly as practicable, if requested so to do by proper authority, out of funds provided by this Act."

Appellant offered in evidence "Authority of Commissioners to Operate and Manage Waterworks System", which reads as follows:

"The commissioners hereinunder appointed shall have full and complete authority to manage, operate, improve, extend, and maintain the municipal waterworks and distribution system, and shall have full and complete charge of said plant, including the right to employ or remove any and all assistants and employees of whatsoever nature, kind or character and to fix, regulate and pay their salaries, it being the intention of this act (Sections 19–4219—19–4244, 19–4226—19–4228) to vest in said commissioners unlimited authority to operate, manage, maintain, improve and extend said municipally owned waterworks and distribution system and to have full and complete charge thereof; provided, said commissioners shall

not have authority or power to sell, mortgage or encumber said waterworks and distribution system, unless the same be done in accordance with the provisions of Act. 131 of the Acts of 1933 (Sections 19–4201—19–4218) as amended, or when authorized by the mandate of an election called for the purposes (that purpose)."

Appellant offered in evidence "Further Powers of Commissioners—Donations to Community Chest and Charitable Organizations", which reads as follows:

"The said commissioners shall in addition to the above enumerated powers, have such other and further powers as are now by law given to the Board of Public Affairs and the city council of any city, and they shall be governed by all existing statutes pertaining to the duties of boards of public affairs and city councils; and in addition, said commissioners shall be authorized to make donations of money from the revenue of municipal waterworks systems to local Community Chests, or other citywide non-sectarian, incorporated, charitable organizations."

Appellee, then, offered the "Adoption of Rules and Regulations by Commissioners—Monthly Reports—Annual Audit", which reads as follows:

"The Commissioners shall adopt such rules and regulations as they may deem necessary and expedient for the proper operation and management of said municipal waterworks and distributing system, and shall have authority to alter, change, or amend such rules and regulations at their discretion. They shall submit monthly reports and annual audits of operations to the Mayor and City Council and furnish such other and further reports, data, and information as may be requested by the Mayor or City Council."

According to Art. 3.50 of the Texas Insurance Code, Vernon's Ann.Civ.St.Tex.,

any policy issued covers "ALL" of the employees of any employer, or "ALL" of any class or classification of employees. Under the certificate of life insurance that was issued to Mr. Black he was referred to as an employee, without any classification whatever. The group life policy contains the following terms and definitions:

"'1. DEFINITION OF THE TERM "EMPLOYEES":

"'The term *"employees"* as used herein means all full-time employees employed and compensated by the employer.

"'2. ELIGIBILITY OF EMPLOYEES:

"'All *present* employees

are *each* eligible for insurance hereunder on the effective date hereof. ~~All other present employees and~~ New employees shall be eligible for insurance hereunder on the 1st day of the policy month coinciding with or next following the date of *commencing continuous service with the employer.*'" (Emphasis added)

---

The word "employees" as used in the certificate of life insurance that was issued by the agent of appellant to Mr. Black creates an ambiguity between the term "employees" and "eligibility of employees" as described in the group life policy. The life insurance certificate shows that appellant is insuring the employees of Texarkana Water & Sewer Systems. Although it refers to the group policy, I will say again, that Mr. Black never saw the group policy, and he is not bound thereby.

Under the group policy, "All present employees are each eligible for insurance hereunder on the effective date hereof." If the appellant is attempting to classify the employees to mean "all full-time employees", and then take the position that "all present employees are each eligible for insurance", whether they are employed full-time or part-time can not be so construed. The appellant then struck out the words "All other present employees and", and left the group policy reading "New employees shall be eligible for insurance hereunder on the 1st day of the policy month coinciding with or next following the date of commencing continuous service with the employees." Much has been written about ambiguity in insurance policies, but the law is so well settled that where there is an ambiguity, the contract must be construed against the insurer. Since the opinion and this dissent is quite lengthy, citation of authority is omitted.

I would overrule the points of error and affirm the judgment of the trial court.