ANNA D. DEGNAN, Respondent, *v.* METROPOLITAN LIFE INSURANCE COMPANY and NATIONAL BISCUIT COMPANY, Appellants.

Supreme Court, Appellate Term, First Department, January 20. 1942.

*Tanner, Sillcocks & Friend* [*William B. Moore* and *John A. Meyer* of counsel], for the appellant Metropolitan Life Insurance Company.

*Charles A. Vilas* [*George H. Klein* of counsell, for the appellant National Biscuit Company.

*Benedict Ginsberg,* for the respondent.

SHIENTAG, J. We are in agreement on the proposition that a strike did not terminate the relationship of employer and employee within the meaning of the provisions of the policy of group insurance. A strike may be defined as a cessation of work on the part of employees until more desirable terms of employment can be obtained. But a strike does not in and of itself operate to put an end to the employer-employee relationship. (*Jeffery-DeWitt Insulator Co.* v. *National Labor Relations Board,* 91 F. [2d] 134; *National Labor Relations Board* v. *Carlisle Lumber Co.,* 94 id. 138, 147; *Iron Molders' Union* v. *Allis-Chalmers Co.,* 166 Fed. 45; *National Labor Relations Board* v. *Columbian E. & S. Co.,* 96 F.

[2d] 948; *Exchange Bakery & Restaurant, Inc.,* v. *Rifkin,* 245 N. Y. 260.) It follows, therefore, that the cancellation of the policy by the employer, because of the existence of the strike, was improper and that the employer was properly held liable by the court below. The majority of this court, however, is of the opinion that the learned court below erred in charging the defendant Metropolitan Life Insurance Company with liability under the policy. The failure to pay premiums, and the notice of cancellation given by the employer operated to relieve the insurance company from liability. The fact that notice of cancellation was given orally by the employer to the insurance company, instead of in writing as required by the policy, does not change the legal situation. The requirement of notice in writing was one solely for the benefit of the insurer, which it might waive.

Judgment modified by striking out the provision for recovery against the defendant Metropolitan Life Insurance Company and as modified affirmed, with costs to respondent against the defendant National Biscuit Company, and with costs to the Metropolitan Life Insurance Company against the respondent.

McCook, J., concurs; McLaughlin, J., dissents, with opinion.

McLaughlin, J. (dissenting). The action is to recover on a policy of group insurance issued to plaintiff's husband, deceased, while he was in the employ of appellant National Biscuit Company. The complaint sets forth two causes of action. The first cause alleges the issuance of the policy, the agreement of the employer to pay the premiums, after deducting a portion thereof from the employee's wages, the payment of all premiums, the death of the insured, and non-payment of the policy after due demand. The second cause of action is to the effect that the National Biscuit Company, without the employee's consent or knowledge, violated its agreement by failing and refusing to pay the premiums after January 8, 1935. It is further alleged that both defendants canceled the insurance without notice to the insured.

Appellants contend that at his death the insured was no longer in the employ of National Biscuit Company, and that his employment terminated on January 8, 1935. It was stipulated that on that day Degnan went on strike with other employees. Under the terms of employment fifty cents was deducted each week from the employee's salary and the employer was to pay the premium on the policy; after January 8, 1935, there was no further pay due him and the company made no further payment of premiums. The insurance company claims discontinuance of the policy for failure to pay premiums; that the policy expired according to its terms and that the employment was ended.

Plaintiff may have a cause of action only if the assured did not cease to be in the employ of the defendant National Biscuit Company by reason of going out on strike on January 8, 1935. From the great weight of authority at the present time it must be concluded that by going out on strike an employee does not cease to be employed by his employer.

In *National Labor Relations Board* v. *Carlisle Lumber Co.* (94 F. [2d] 138, 147) Judge STEPHENS, in a concurring opinion, says: " The gist of respondent's argument is that workmen who were on strike and had been discharged because of striking, prior to the effective date of the Wagner Act, were strangers to respondent * * *. But long before the passage of this act the contest for advantage between capital and labor demonstrated that employees on strike were not strangers to employers. The courts became cognizant of changes in our industrial system and have in numerous cases noted it. * * * The holding in the *Jeffery* opinion [*Jeffery-DeWitt Insulator Co.* v. *National Labor Relations Board,* 91 F. (2d) 134] that ' striking employees ' is a name that denotes a status is only the latest judicial recognition of a commonly known fact."

It, therefore, follows that by going out on strike the employee did not cease to be employed. The National Biscuit Company is clearly liable because by its action it destroyed the rights of the assured in the policy of insurance made for his benefit. It did so solely on the erroneous assumption that by going out on strike the assured severed his employment with the company.

Appellants place great reliance upon the case of *Chrosniak* v. *Metropolitan Life Ins. Co.* (121 Misc. 453; affd., 209 App. Div. 846). What distinguishes that case, however, is the fact that the policy involved there used the words " Active Employment." Active employment, naturally, would not include a strike period. In the present case there is merely the term " employment " used and that is of great importance, for that term is broad enough to include the relationship existing while the employee was still on strike.

It is urged that the defendant Metropolitan Life Insurance Company is not liable because there was no contractual relationship between the assured and this company. I cannot agree with this argument because, even if we assume that the business transactions were solely between the two companies, nevertheless the insurance was taken out for the benefit of the assured and his beneficiary. That insurance was represented by his interest in both the certificate of insurance issued to him and in the group policy. The moment that moneys were taken from his salary

and added to moneys furnished by the National Biscuit Company and paid to the Metropolitan Life Insurance Company as premium, this assured had a vested right which could only be taken away from him by the insurance company's carrying out the provisions of its contract as to cancellation. It was the insurance company's duty not to cancel unless it received the proper notification in writing from the National Biscuit Company that the assured had ceased to be employed by that company.

In the policy issued it is provided (provision 6) that the employer agrees to report to the company *in writing* the names of all persons who shall have ceased to be in its employment, together with the date when such employee left the employment or severed his connection with the company, and that the insurance shall be discontinued as of the date when such employee left the employ of the National Biscuit Company. The record fails to disclose any such writing. As a matter of fact, all that was done was to have a witness named Fitzgerald, employed by the National Biscuit Company, take the cards to the Metropolitan Life Insurance Company, pick out the cards and arrange to have the policy of this assured canceled. Not only did they cancel it at the end of January, but they antedated the cancellation as of January eighth.

The only exhibit which could be a writing tending to show a written notice to cancel is Exhibit A. That exhibit has printed on it the words " Service terminated ——————." The space for the date of termination is blank. It will thus be seen that the date of termination of service was not furnished in writing. This same card bears the stamp " Cancelled January 8, 1935," but this was the result of a personal arrangement between the witness Fitzgerald and the representatives of the insurance company. There is no notice in writing as called for by the policy. As this plaintiff's assured had vested rights, he was entitled to have the insurance company cancel these rights in the only manner in which it could cancel them, that is, in writing as provided by the policy. As none was furnished, the insurance company must remain liable if this man was still working there on January 8, 1935.

The theory of the insurer that the policy lapsed for failure to pay premiums is erroneous, for " the [insurance] company * * * cannot set up * * * non-payment of premiums which it did not intend or expect to receive, and which it may justly be said to have occasioned by its own unauthorized act." (*Whitehead* v. *New York Life Ins. Co.*, 102 N. Y. 143.)

It follows that the cancellation of the policy was illegal and both defendants had a part in that illegal act. Both are liable, and the judgment of the lower court should be affirmed in all respects.