Harlan *v.* Washington National Insurance Company, Appellant.

Argued January 8, 1957. Before Jones, C. J., Bell, Chidsey, Musmanno, Arnold, Jones and Cohen, JJ.

*Robert A. Detweiler,* for appellant.

*J. M. Marsh,* with him *Charles L. Ford,* and *LaBrum & Doak,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 18, 1957:

For 40 years Charles F. Harlan worked for the Consolidated Dressed Beef Company in various capacities, qualifying during the latter 25 years of his employment as a specialist in the purchase of live cattle. In November, 1952, he notified the president of the company, Baldwin Haines, that he was not enjoying the best of health and wished to absent himself until he should feel better. The president approved Mr. Harlan's request and agreed that during the time he was away the company would pay him $100 per month.

On March 30, 1953, Harlan died, and his widow, as administratrix of his estate, applied for benefits payable under the group life insurance policy which her husband through his employer, carried with the Washington National Insurance Company. The company refused payment on the averment that Harlan at the time of his death was not, as the policy required him to be, a "full time, permanent employee." Mrs. Harlan sued on the policy and recovered a verdict for the face value of the policy, $3,000. The defendant company asks for judgment n.o.v., contending that the evidence does not support the jury's finding.

It can scarcely be questioned that Harlan was a permanent employee of the Consolidated Dressed Beef Company; he did not resign and he was not discharged. The only matter for consideration on this appeal is whether this Court should say as a matter of law that the evidence cannot sustain the jury's conclusion that Harlan was a full-time employee. While the phrase in dispute can mean and usually does mean a person who is engaged at his given job for the full daily and weekly period which his duties require, it is not by any means restricted to that meaning alone. The phrase *full-time employee* may be used to distinguish a permanent em-

ployee from a transitory or seasonal employee who is engaged to work only certain months of the year, on particular days of the week, or only a designated number of hours per day.

An employee may not actually appear on the premises of his employer for a protracted period of time and still be a full-time employee. Such would be true of one who is absent on account of illness, vacation, or for any reason which has the approval of the employer. The policy involved in this lawsuit specifically states that: "Temporary layoff or leave of absence shall not be considered termination of employment for the purpose of this insurance, unless the employer shall so elect."

Whether or not Harlan was a full-time employee in the meaning of the insurance policy was a question of fact for the jury to determine, and we are satisfied from a reading of the record that they were fully warranted in concluding that Harlan's employment did come within the scope of the policy.

Although Harlan asked for time off on account of illness, he was not allowed to enjoy his illness undisturbed by office cares. He was required to pay the penalty which is inflicted on many men who do their jobs too well. The president of the company, Baldwin Haines, attempted to perform Harlan's duties during his absence but he found himself lacking the training and experience required to do the job properly. He did not know the type of cattle to buy, where to buy them, and on what conditions to buy. Accordingly he turned to Harlan like an apprentice blacksmith turns to his master who finally does the job himself. He called Harlan on the telephone, he visited him at his home and at the hospital, and had him come to the plant. Haines testified: "I asked him, who these people would be that I could put confidence in to purchase animals

in these far-away markets. I mean whose cattle we should buy. There is quite a difference in the way the animals are fed. You gain that knowledge by experience, sir. I leaned rather heavily on Mr. Harlan, maybe too much, when he wasn't in good shape."

Boyd Smith, employee of the Consolidated, testified that it was his recollection that the minutes of the company showed that Harlan was "retired" on November 28, 1952. The minutes were not produced, and even if they had been, they would not be conclusively binding on the plaintiff in view of the evidence that Harlan was still drawing a salary and was still being used by the president as an employee of the company.

In the case of *Grove v. Equitable Life Assurance Soc.,* 336 Pa. 519, 525, the question arose as to whether John W. Grove was an employee of the Carnegie Steel Company at the time of his death. The company records showed that he left his employment on June 9, 1931 on account of illness. His employment card carried the notation: "Terminated June 15, 1931, and paid to June 30th, inclusive." Later the card was changed to read: "Leave of absence extended two months 8-31-31." He died on November 27, 1931, a month after the expiration of the leave of absence. The insurance company refused payment under the group insurance policy, contending that Grove was not an employee of the Carnegie Steel Company at the time of his death. This Court held otherwise: "The jury found on sufficient evidence the facts that Grove's employment with the company had not been terminated and that his status was that of an employee on a leave of absence. It is true that the leave of absence had expired before his death but there is nothing in the record to establish that the expiration of this leave of absence was equivalent to a termination of his employment. It may be that the company officials looked upon Grove's employ-

ment as having been terminated at the expiration of his leave of absence, but their belief as to his status did not legally determine it."

Full-time employment does not mean full-time pay. It means being available for full employment; and full employment does not mean a hand at the helm throughout the entire voyage; it means standing by to take over when the exigencies of the passage require the application of one's skill acquired over many journeys of the past. Harlan was standing by when death called. The law will not deprive his estate of what he has earned.

Judgment affirmed.