DONNA M. LANDIS, Appellant, v. AMERICAN
POTASH & CHEMICAL CORPORATION, a Cor-
PORATION, AND A. J. CARRADO, Respondents.

No. 4451

October 25, 1962                               375 P.2d 402

*George Rudiak,* of Las Vegas, for Appellant.

*Morse & Graves,* of Las Vegas, for Respondents.

## OPINION

By the Court, BADT, C. J.:

This appeal requires the construction of a collective bargaining agreement entered into by a labor union and the employer, with particular reference to the employer's agreement to continue in effect certain group insurance, as well as the construction of the group insurance policy itself. Both parties agree that the collective bargaining agreement and the policy of group insurance must be considered and construed together.

All emphasis appearing in the opinion has been supplied by the court, as key words and key phrases, whether relied upon by the respective parties or by the court's opinion, are to a large extent determinative of the conclusions reached.

The action was brought by the widow as third-party beneficiary, appellant here, against the employer, respondent here,[1] for damages for the employer's

---

[1]Respondent Carrado was the employer's manager of administrative services. American Potash & Chemical Corporation is the real respondent and will hereafter be referred to as such.

alleged breach of the collective bargaining agreement to maintain the group insurance for the benefit of the plaintiff's late husband. The alleged breach was respondent's wrongful termination of the group policy of life insurance, under which the widow would have been entitled to recover a death benefit of $6,500. Respondent had terminated the group policy when the deceased and his fellow employees had been out on strike for some three months.

Specifically, Article X of the collective bargaining agreement provided: "The group insurance plan *as agreed upon* for the employees covered by this agreement will be continued during the life of this agreement." The collective bargaining agreement ran for a term of two years from April 1, 1958, to April 1, 1960, and provided for successive extensions for additional terms of one year. It provided that either party might reopen the agreement within 60 days prior to April 1, 1959, "for the purpose of negotiating changes in straight-time hourly rates of pay only," and that if agreement should not be reached within such 60-day period either party might thereafter relieve itself of the obligations of the clause prohibiting strikes and lockouts.

It was stipulated by the parties that the union called a strike on or about April 20, 1959, to enforce its demands for "changes in straight-time hourly rates of pay" and that all conditions precedent to the calling of such strike had been complied with by the union. The strike continued until September 22, 1959. It was further agreed that during the entire period of the strike the collective bargaining agreement remained in full force and effect.

Landis, as one of the striking employees, absented himself from work commencing April 20, 1959, performed picket duty during the strike, and intended to return to work for respondent upon the termination thereof. He secured temporary employment elsewhere for a period of one week.

Respondent had procured a group insurance policy

under which an appropriate certificate had been issued to Landis.

The effective date of the policy is May 16, 1956, and such certificate, with the full terms of the policy, was in Landis's hands at the time the collective bargaining agreement was entered into in 1958.

The policy of insurance contained the following provisions:

"TERMINATION OF INSURANCE.—The Employee's Group Life Insurance will automatically terminate if his employment terminates *as defined below*, or if he ceases to be a member of the classes of Employees eligible for the insurance, or if the provisions of the Group Policy for the insurance terminate, or (should the insurance be on a contributory basis) *if he fails to make, when due, any required contribution.*

"Termination of employment will, for all purposes of the Employee Group Life Insurance, be deemed to occur *when an Employee ceases to be actively engaged in work on a full-time basis with the Policyholder*. However, in the case of Employees who are disabled, *granted a leave of absence*, temporarily laid off, placed on a part-time employment basis or retired, the Policyholder *may*, acting on a basis precluding individual selection, *consider such Employees as still employed on a full-time basis for a limited period* as specified in the Employee Group Life Insurance provisions of the Group Policy."

Upon the cover page of the certificate is printed: "Should you cease active work for any reason, contact the Policyholder at once to determine what arrangements, if any, can be made to continue your insurance." A pamphlet entitled "Your Group Insurance Plan," published by respondent for distribution to its employees, contains the following paragraph:

"TERMINATION OF INSURANCE   Insurance for yourself and your dependents will terminate if you discontinue your contributions, if your employment terminates, or if the Group Policies terminate.   *   *   *"

From the inception of the strike, April 20, 1959, until July 20, 1959, respondent accepted from Landis and

the other striking employees their share of the insurance premiums and paid the employer's share, thus allegedly maintaining the group insurance in force. On July 20, 1959, however, the employer sent the following letter to its striking employees:

"To Our Striking Employees:

"Since April 20 when the strike started, the Company has continued to make group insurance coverage available to you and your eligible dependents.

"For over three months the Company has continued to pay the major portion of the premium costs of this insurance, although you have not been actively working with us since April 20; and we have made these payments in spite of the fact that many of you have been employed by others. Therefore, we regret that we are unable to justify further extension of this insurance coverage for you and your dependents. This letter is to advise you that your group coverage will terminate on July 31, 1959.

Very truly yours,
A. J. Carrado, Manager
Administrative Services"

After July 31, 1959, respondent refused to accept further contributions from Landis of his portion of the premiums and canceled the group insurance policies as of July 31, 1959.

After settlement of the strike, September 22, 1959, respondent reinstated the insurance coverage for all striking employees who returned to work.

Appellant's claim to the insurance company was rejected on the ground that the coverage was not in force on September 3, 1959, the date of her husband's death. This action followed, and the court made the following findings, among others:

"XII. By reason of said strike, and not otherwise, Rudy J. Landis, as a striking employee of the Company, was absent from his employment with the Company, commencing on April 20, 1959. During said strike, Rudy J. Landis obtained temporary employment as a plumber for a period of about one week with a plumbing contractor in Las Vegas. Said employment was outside his

usual occupation and trade as a pipefitter, and was obtained solely to supplement his income during the period of the strike, and with the intention on his part of returning to work for the Company when the strike terminated. Rudy J. Landis performed picket duty during the continuance of the strike, and up to the time of his death.

\* \* \* \* \*

"XX. The clause of said Group Insurance Policy Certificate entitled 'Termination of Insurance' contained, inter alia, the following agreement:

'Termination of employment will, for all purposes of the employee group life insurance, be deemed to occur when an employee ceases to be actively engaged in work on a full-time basis with the policyholder.'

\* \* \* \* \*

"XXII. The above agreements were understood by the Company and by the Union when they executed the contract of insurance to be a binding and effective part of said insurance contract.

\* \* \* \* \*

"XXIV. Striking employees are not 'actively engaged in work on a fulltime basis with the policyholder' within the meaning of those words as expressed in the contract of Group Insurance entered into between the Company and the Union; therefore, the deceased, when he came to his demise on September 3, 1959, was not an active employee on a full time basis within the meaning of the contract of insurance and the intention of the parties to that contract as expressed therein.

"XXV. By accepting premiums from its striking employees, adding its own contributions thereto, and transmitting such premiums to the insurer during the first three months of the strike, the Company acted fairly with its employees, did not recognize any contractual obligation to keep the group insurance in force, and did not intend a waiver of its rights.

"XXVI. The Company acted fairly and within the terms of the contract of insurance."

It entered judgment in favor of respondent, and the widow appealed.

Appellant assigns as error (1) the court's entry of such judgment; (2) its finding of the first paragraph of the "termination of insurance" hereinabove quoted, and its failure to recite the second paragraph commonly called the "election clause"; (3) that the other findings as numbered above are not supported by the agreed and stipulated facts and are contrary to the evidence and that such purported findings of facts are really conclusions of law; (4) that the trial court erred in failing to find in accordance with the stipulated facts that the employer's pamphlet "Your Group Insurance Plan" "says nothing about the policy terminating in the event of a strike or if the employee ceases to be 'actively engaged in work on a full-time basis' "; and (5) certain alleged errors in the admission of evidence.

The assignments of error do not present a complete picture of appellant's theory of the case. Briefly such theory may be stated as follows: The collective bargaining agreement obligated respondent to keep the group insurance in force for the life of the agreement. Under the terms of the collective bargaining agreement, reserving to the union the right to strike over the question of straight-time hourly rates of pay, it was clearly the intention of the parties to keep the group insurance policy in force, notwithstanding the fact that the employees may have been temporarily idled by the strike. Respondent therefore had impliedly agreed to exercise the right of election in such a way as to keep the group insurance in effect and therefore the employees temporarily idled by such lawful strike are on leave of absence, and respondent was contractually bound to elect so to consider them. By accepting premiums from the striking employees and adding its own contributions thereto and submitting same to the insurer for the first three months of the strike, respondent recognized that the employment relationship continued notwithstanding the strike, even though the striking

employees could not be said to be "actively engaged in work on a full-time basis." This was an election to keep the policy in force and constituted respondent's practical construction of the contract as obligating it so to do. Having thus elected, it would be bound by way of waiver, even if not actually bound so to elect by the terms of the contract. The subsequent cancellation of the group insurance therefore constituted a violation of the collective bargaining agreement for which appellant, as the wife of the insured employee and as beneficiary under the group insurance policy, was entitled to recover against the employer. Lastly, it is contended that such cancellation was a willful, wrongful, malicious, and oppressive act intended to coerce a strike settlement, thus entitling defendant to punitive damages.

Appellant supports her argument, first, by the assertion that a strike does not interrupt the employer-employee relationship. The authorities support this view and we may accept the same. We may also accept the fact that the employer-employee relationship is a *status* which was not destroyed by the strike.

Appellant further asserts that if we interpret the termination clause as interpreted by the trial court, we reach an unreasonable construction, namely, that the employer's covenant to keep the insurance in effect during the life of the collective bargaining agreement was taken away by the termination clause.

Appellant further contends that the right to strike under the conditions recited in the collective bargaining agreement was equivalent to a provision that when the employees were on strike they were on leave of absence, and that under the election clause the employer was obligated and bound to consider them as such.

She further contends that it is evident that the employer's agreement to keep the insurance in force was inserted at the insistence of the employees, through the union, at the bargaining table, and that this is the more evident because the insurance contract had been in force for a long period of time before the collective bargaining agreement was executed.

We turn now to the authorities on which appellant relies. Her greatest reliance is on the language used in Degnan v. Metropolitan Life Insurance Co., 178 Misc. 312, 34 N.Y.S.2d 238, and on Tedesco v. Turner & Seymour Mfg. Co., 19 Conn.Supp. 192, 110 A.2d 650. In Degnan the New York court held in favor of the defendant insurance company but against the employer. The case is not in point because it contained no clause similar to the provision contained in the policy here, its termination clause providing only for termination of the employee's coverage upon termination of his employment. The court held simply that the *employment* of striking employees did not terminate merely by reason of the fact that they went out on strike. As we have seen, termination of employment in the case at issue is directly defined as occurring "when an Employee ceases to be actively engaged in work on a full-time basis with the Policyholder." As this situation was the basis of respondent's cancellation of the insurance policy, its absence in Degnan deprives that case of value as authority here.

In Tedesco, as in Degnan, the court denied relief against the insurance company but granted relief against the employer. The employee had legally absented himself from work by engaging in a strike permitted under the provisions of the collective bargaining agreement. The employer had canceled the insurance simply because the employee was on strike. The group insurance policy in that case provided coverage for "part-time workers" and "full-time workers." The court rejected the contention that the word "active" should be implied to qualify the term "workers" upon the general ground that the parties could have expressed such qualification in the contract if it had been their intent so to do. As in Degnan, there was no such definition of termination of employment as is the case here.

Other cases relied upon are likewise distinguishable. The case of Chrosniak v. Metropolitan Life Ins. Co., 121 Misc. 453, 201 N.Y.S. 211 (affd. without op.), 209 App. Div. 846, 204 N.Y.S. 898, affords complete support for the

trial court's conclusion. The group life insurance policy in that case provided: "Upon termination of *active employment,* the insurance of any discontinued employee under this policy automatically and immediately terminates." It will be noted that the clause is not so strong as the one we are considering, defining the termination of employment as occurring when an employee ceases *to be actively engaged in work.* Again appellant distinguishes this case because the suit was against the insurance company. However, in view of the agreement of appellant that the terms of the insurance policy must be considered in connection with the employment agreement, the court's holding that, as the plaintiff's husband had died while he was still out on strike, his *active employment* had terminated, precluding the recovery of the death benefits under the group life insurance policy, finds full support in Chrosniak. The case is authority for the proposition that a striking employee is not engaged in *active employment* while out on strike and, a fortiori, in the present case that he is not *actively engaged in work* while out on strike. It may be noted that the dissenting justice in Degnan points out that in Chrosniak the policy used the words *active employment* as naturally not including a strike period, while in Degnan the term used was simply *employment,* a term broad enough to include the employer-employee relationship existing while the employee was still on strike.

Elsey v. Prudential Insurance Company of America, 262 F.2d 432 (10th Cir. 1958) (which involved a policy defining eligibility for insurance when an employee has completed "three months of continuous service on a full-time basis with the Policyholder"), affords us a construction of a clause virtually identical to the one herein involved. In holding that the coverage was not in effect at the time of the insured's death, the court said, id. 435, "Being 'actively at work' on October 26, 1957, was a condition precedent to an effective contract as of that date. [Citing authorities] 'Actively at work on full time' means actually on the job and performing the employee's customary work."

Appellant's final contention and the one most strenuously argued by her is that Landis, while on strike for a lawful cause, should be considered as being on "leave of absence," and that in any event the employer's agreement to keep the insurance in force during the life of the collective bargaining contract bound him to elect that Landis was, during such strike, on "leave of absence." This contention is closely connected with the contention that the payment of premiums by the employer for the first three months of the strike constituted such election. We turn, then, to the "election clause" upon which appellant relies.

After providing that the insurance will terminate if the employment terminates and that such termination is deemed to occur when an employee ceases to be actively engaged in work on a full-time basis with the employer, the provision then proceeds as follows: "However, in the case of the Employees *who are* * * * *granted a leave of absence* * * * the Policyholder may * * * consider such Employees as still employed on a full-time basis *for a limited period* as specified in the Employee Group Life Insurance Provisions of the Group Policy."

It should be noted, first, that the election is not to grant a leave of absence but simply to consider as still employed on a full-time basis for a limited period such employees who *are granted* a leave of absence. Be that as it may, we are not persuaded by appellant's argument that though "not actively engaged in work on a full-time basis within the meaning of the termination clause of the group insurance policy, [a striking employee is nevertheless] one 'granted a leave of absence' within the meaning of the election clause *immediately following it."*

Nor can we agree with appellant's argument that the provision of the collective bargaining agreement permitting the parties under certain conditions to open up negotiations toward changing the straight-time hourly rates of pay, and permitting under certain circumstances a strike or lockout, must be considered an

implied agreement that the employer "would treat such authorized strike as a 'leave of absence' * * * and that it would exercise its right of election under the terms of the policy to keep the policy in force during the period of such authorized absence from work." No authority is cited in support of such argument, or in support of the argument that the definition of termination of insurance "when an employee ceases to be actively engaged in work on a full-time basis" is to be construed as though it read, "when an employee ceases *permanently* to be actively engaged in work on a full-time basis"; or in support of the statement that "the respondent must be deemed to have agreed to treat employees temporarily idled by such strike as being on 'leave of absence.' * * *." These contentions simply read into the policy of insurance words that are not there. Appellant does not even contend that an election so made would be effective against the insurance company as resulting in actionable coverage under the policy.

Appellant places great weight on Harlan v. Washington Nat. Ins. Co., 388 Pa. 88, 130 A.2d 140, which affirmed a death benefit under group insurance requiring the employee at the time of his death to be a full-time, permanent employee. The jury had found under the facts that the deceased was at the time a full-time, permanent employee and the policy in question provided that "Temporary layoff or leave of absence shall not be considered termination of employment for the purpose of this insurance, unless the employer shall so elect. In the instant case there was no layoff, no leave of absence, no such election.

Appellant contends that under respondent's covenant to keep the group insurance in force during the life of the agreement, it was bound to take all measures that it could legally take under the so-called election clause to keep the group insurance in force. There are four answers to this. First, it is to be noted that the permissive clause is not to grant a leave of absence but simply, in case a leave of absence has been granted, that the employer may consider such employees as still

employed on a full-time basis for a limited period. Here the employer never granted appellant's decedent a leave of absence. There was, then, no basis for an election by the employer to consider the employee still employed on a full-time basis. Secondly, the election might be made not indefinitely but for a limited period only. The period was definitely limited in the present case, and the insurance terminated at the expiration of such period. It is obvious that the insurance company would not and did not provide for the employer's election to consider the insurance in effect indefinitely on an actual or implied granting of a leave of absence. Thirdly, any election, whether express or implied, would have to be an effective election, that is to say, an election that would be binding upon the insurance company so as to permit a recovery directly against the insurance company upon the policy. This obviously did not occur in the present case. When the question was put to counsel on oral argument, he frankly and conscientiously replied that he could not say that such was the case. Fourthly, no authorities have been cited, nor have we found any, in support of this contention.

The "termination of insurance" provisions are found in the group policy itself and not in the collective bargaining agreement, but, as we have seen, both parties have agreed that the two contracts must be considered together.[2]

Nor was the trial court compelled to find a waiver in the payment by the employer during the first three months of the strike of its share of the insurance premiums. The court's finding that by such action "the company acted fairly with its employees, did not recognize any contractual obligation to keep the group insurance in force, and did not intend a waiver of its rights" appears to have support in the agreed facts and the

---

[2]Appellant says: "It must be conceded that when the parties, in Paragraph X of the collective bargaining agreement, used the words 'group insurance plan *as agreed upon* \* \* \* will be continued for the life of this agreement,' they were referring to the [group insurance] policy \* \* \*."

evidence. The court was justified in inferring that such action had been fair and that the temporary continuance of payments by the employer was voluntary and gratuitous on its part. Appellant was given ample notice of the discontinuance of such payments, and was not caused to change his position to his detriment in reliance on the asserted "waiver." Appellant argues that the terms of the policy giving him the right to convert to an individual policy (for a larger premium and a diminished death benefit) was not available to him because such right was limited to employees who had been continuously insured for a period of at least five years. But with the termination of the group insurance the employee was always at liberty to seek other insurance. This applied to all employees. We do not feel that this contention adds anything to appellant's case.

Appellant assigns error to the admission in evidence of certain documents. Even without these documents, however, the record furnishes ample support for the court's findings. The case was tried to the court without a jury and the admission of the evidence, even if incompetent, would not require a reversal. The trial judge will be presumed to have relied only upon the admissible evidence without regard to any evidence that was inadmissible. Green v. Henderson, 66 Nev. 314, 208 P.2d 1058.

As to the assignment of error that the trial court recited in its findings only the first paragraph of the "termination of insurance" provision and not the paragraph that followed containing the "election clause," we find no prejudice. The entire policy was in evidence containing both paragraphs and, as will be noted, the election clause has had our full consideration.

The assignment that the findings are not supported by the agreed facts and are contrary to the evidence is, in our opinion, without merit. The same may be said of the assignment of error that the purported findings of fact are really conclusions of law. Nor is there any prejudicial error in the trial court's failing

to find, in accordance with the stipulated facts, that the employer's pamphlet, "Your Group Insurance Plan," "says nothing about the policy terminating in the event of a strike or if the Employee ceases to be 'actively engaged in work on a full-time basis.' " The termination provisions were fully within the knowledge of the employees.

The fact that the group insurance was one of the things discussed in the collective bargaining agreement and was one of the things that the union bargained for does not compel the conclusion, as urged by appellant, that the agreement that "the group insurance plan *as agreed upon* for the employees covered by this agreement will be continued during the life of this agreement," considered in connection with the other clauses discussed in this opinion, obligated the employer to maintain the insurance in effect indefinitely during a strike.

The judgment is affirmed with costs.

McNAMEE and THOMPSON, JJ., concur.