**TRANSAMERICA INSURANCE COMPANY, Appellant,**

v.

**FROST NATIONAL BANK OF SAN ANTONIO et al., Appellees.**

**No. 7511.**

Court of Civil Appeals of Texas, Beaumont.

Oct. 18, 1973.

Wiley, Plunkett, Gibson & Allen, San Antonio, for appellant.

Denman, Franklin & Denman, Groce, Locke & Hebdon, San Antonio, for appellees.

KEITH, Justice.

Defendant, Transamerica, appeals from a judgment awarding plaintiffs a recovery upon a trust agreement executed by the defendant and third parties.

McKenzie Construction Company (hereinafter "contractor") was engaged in work upon four large projects in several areas in Texas; and, in each instance, defendant was surety upon its performance and payment bonds on the several jobs. Before September 1, 1969, contractor became indebted to Frost National Bank and First National Bank of San Antonio (hereinafter "banks") in a total sum greatly in excess of $100,000, the loans being partially secured by liens upon contractor's equipment then being used upon the construction projects bonded by defendant.

Early in September, 1969, contractor notified defendant that it was in such severe financial straits that it could not complete the contracts without the financial assistance of its surety. Contractor and defendant-surety then entered into a lengthy and comprehensive "Trust Agreement" dated September 11, 1969, which forms the basis of this litigation.

Insofar as material to this litigation, the agreement between contractor and defendant provided that contractor would continue on the jobs bonded by defendant; that all contract monies earned or received from the several jobs, including retained percentages, would be placed in a separate bank account subject to being withdrawn only by checks signed jointly by contractor and a representative of defendant. Such receipts would be used in payment of labor and material used in the performance of the contracts; and, as provided in Paragraph 1(b), thereof:

"As an allowance for payment of certain obligations of Contractor to [banks], such allowance shall be a total of one-fourth (¼th) of the sum of the August estimates to be received from [the several construction projects], *on the express condition that this Agreement has not been breached by Contractor in any way at the specified dates.* Such allowance shall be paid as follows:

"[25% of 'said allowance' on September 15, 1969; on October 15, 1969; on November 15, 1969; and on December 15, 1969]"

(emphasis supplied)

The trust agreement provided that contractor and A. J. McKenzie, its president, "is to devote its and his full time to expediting completion" of the contracts bonded

by defendant. While the agreement was expressly declared to be irrevocable on the part of contractor, defendant reserved the right to repudiate the agreement at its discretion. However, the agreement contained a proviso reading: "But it is specifically agreed that the obligations provided for in Paragraph 1(b) [payments to the banks noted above] shall be binding until the Contractor has breached this agreement or any part thereof."

Contractor and defendant collected in excess of $400,000 on the August estimates due and payable to contractor for work performed prior to the execution of the trust agreement. Defendant paid to banks during September and October, slightly in excess of $50,000 but declined to make the payments due in November and December as provided in Paragraph 1(b) of the trust agreement.

Banks instituted suit to recover the payments due in November and December under the trust agreement and defendant surety filed a cross-action seeking recovery of the payments theretofore made in September and October. This cause proceeded to trial and all parties rested at the close of banks' case, defendant offering no evidence upon this hearing. Before a decision had been announced, banks took a non-suit and their claims were dismissed without prejudice to defendant surety's cross-action.

Shortly thereafter, banks instituted a new suit upon the same claims which had been asserted in the original action. Defendant urged pleas in abatement, res judicata, etc., to the new suit but all were overruled and defendant's cross-action in the original suit was consolidated for trial with plaintiffs' new suit over defendant's objection.

The jury returned four answers favorable to banks, finding that on the fifteenth days of September, October, November, and December, 1969, contractor and McKenzie, individually, "were substantially devoting . . . full time to expediting completion of the work of the four construction projects in question."

The trial court overruled defendant's motion for judgment non obstante veredicto, entered judgment for plaintiff banks, and the appeal comes to us with twenty-one assignments of error.

■ The first nine points brought forward complain of the action of the trial court in overruling and in refusing to sustain defendant's motions and objections pertaining to the first suit between the parties which was non-suited by the plaintiff banks. We find no merit in such points and each is overruled for the reasons now to be stated.

Under Rule 164, Rules of Civil Procedure, plaintiff banks had an absolute right to take a non-suit in the cause, having made a timely motion therefor. State v. Gary, 163 Tex. 565, 359 S.W.2d 456, 458 (1962); Ex parte Norton, 118 Tex. 581, 17 S.W.2d 1041, 1043 (1929); Renfroe v. Johnson, 142 Tex. 251, 177 S.W.2d 600, 602 (1944); State v. Roberson, 409 S.W.2d 872, 875 (Tex.Civ.App., Tyler, 1966, no writ).

The rule contains a proviso: " . . . but he shall not thereby prejudice the right of an adverse party to be heard on his claim for affirmative relief." When the plaintiff banks took their non-suit, defendant surety's claim for affirmative relief remained upon the docket of the court subject to its continuing jurisdiction. State v. Roberson, supra (409 S.W.2d at 876). Or, as stated in Sandefer v. Sandefer, 466 S. W.2d 31, 32 (Tex.Civ.App., Eastland, 1971, no writ): "Once a claim for affirmative relief has been filed, a plaintiff's right to move for a dismissal or nonsuit is limited to his cause of action only. Hoodless v. Winter, 80 Tex. 638, 16 S.W. 427 (Sup.Ct. 1891); . . . . ."

Defendant's reliance upon Federal Underwriters Exchange v. Read, 138 Tex. 271, 158 S.W.2d 767 (1942), is misplaced. The Court cited a prior opinion holding

that the antecedent statute " 'does not apply in its broad sense to workmen's compensation cases.' " (158 S.W.2d at 769)

■ The dismissal of banks' prior suit without prejudice did not amount to res judicata upon the claim therein asserted. In Crofts v. Court of Civil Appeals, 362 S.W.2d 101, 104 (Tex.1962), the rule was stated in this manner:

"It is elementary that a dismissal is in no way an adjudication of the rights of parties; it merely places the parties in the position that they were in before the court's jurisdiction was invoked just as if the suit had never been brought."

See also, Serna v. Reyna, 418 S.W.2d 701, 707 (Tex.Civ.App., Corpus Christi, 1967, error ref. n. r. e.), and cases therein cited.

The first nine points of error are overruled.

■ By points ten and eleven, defendant contends that the banks were not third party beneficiaries of the trust agreement and had no right to bring suit thereon. We add to our preliminary statement of the contents of the trust agreement by noting that contractor was required to continue using the equipment upon the jobs (Paragraph 8). This was the same equipment which was mortgaged to the banks, the underlying notes in some instances being payable upon demand and subject to being matured at the option of banks. This equipment was necessary to complete the jobs and the banks refrained from exercising their right to foreclosure as long as the equipment was needed upon the jobs.

The right of a party not privy to a contract to maintain a suit thereon has been the subject of much litigation. In Republic Nat. Bank v. National Bankers Life Ins. Co., 427 S.W.2d 76, 80 (Tex.Civ.App., Dallas, 1968, error ref. n. r. e.), some of the rules relating to the subject were stated with admirable clarity:

"Beneficiaries of contracts to which they are not parties are divided into three classes: (a) donee beneficiaries, (b) creditor beneficiaries, and (c) incidental beneficiaries; and only those falling within the first two categories may enforce contracts made for their benefit.

"An incidental beneficiary, one who will be benefited only incidentally by the performance of the contract, cannot maintain an action thereon; an incidental beneficiary acquires, by virtue of the promise, no right either against the promisor or the promisee.

"Where a stranger contends that it was intended that the provisions of a contract should inure to his benefit such intention must be clearly apparent. If there is any doubt concerning this intent in this regard as it appears from the contract itself, such doubt should be construed against such intent." (all citations omitted)

See also, Restatement, Contracts, § 133 (1932); Hildebrand, "Third Party Contracts in Texas," 9 Tex.Law Rev. 125, 162 (1931); 31 Tex.Law Rev. 902 (1953).

Considering the record as a whole, it clearly appears that the banks occupied the status of creditor beneficiaries and were entitled to recover under the terms of the trust agreement. Points ten and eleven are overruled.

■ Defendant challenges the answers of the jury to the four questions submitted; namely, that contractor and McKenzie devoted substantially full time to the completion of the work upon the several contracts upon each of the four "payment" dates set out in the trust agreement. The points are couched in terms of "no evidence" and "insufficient evidence" and, as to the first, we will consider only the evidence supporting the answers and, as to the latter, we will consider the record as a whole.

The record is lengthy and we will not attempt to set it out in detail. It is sufficient to say that A. J. McKenzie, president of contractor, described how his business was conducted, testified that he used his best efforts to perform and complete the contracts described in the trust agreement; that he and his company devoted full time to the completion thereof; knew no way in which he had failed to comply with the agreement. He was corroborated by A. R. Martin, a vice-president of contractor in charge of one of the jobs, and by Robert Eubank in charge of another. McKenzie remained on the payroll and was paid from the trust fund account by checks countersigned by defendant, until February, 1970, long after the last of the payments were due to banks under the contract.

Defendant, on the other hand, points to testimony that contractor had at least one other job in progress, which was not bonded by defendant, and that management personnel of contractor had supervisory duties in connection therewith; and, contrary to McKenzie's representations to it, the four bonded jobs were not completed within the time contemplated by the parties.

Having carefully reviewed the evidence, we are unable to agree with defendant. The trust agreement required contractor to devote its full time to "expediting completion" of the contracts. The court gave an explanatory instruction defining "full time" which is set out in the margin.[1] Each of the points attacking the sufficiency of the evidence is overruled.

But, in point thirteen, defendant says that the trial court erred in overruling its objections to the inclusion of the instruction on "full time" in the charge. The thrust of the argument is that it amounted to a dilution of the contractual requirement

and permitted the jury to find that contractor had devoted substantially full time to the bonded work while it was "doing other work for other people."

We recognize the rule announced in Fox v. Thoreson, 398 S.W.2d 88, 92 (Tex.1966), that the language used by the parties should be given "its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated." But, defendant made no attempt to show, by affirmative evidence, that contractor neglected the bonded jobs, devoted an unreasonable amount of time to the unbonded jobs, or that it ever notified either contractor or banks that it objected to contractor's other activities. As banks contend in reply, the evidence discloses only an inconsequential amount of time was spent on other projects by contractor's employees; and, more importantly, defendant did not make any complaint of such activity until long after the time for the last payment to have been made to banks had expired. It then, and for the first time, raised a question of breach of the contract by contractor.

Obviously, the instruction permitted the jury to find substantial compliance with the requirement without finding that contractor had spent one hundred percent of the time on the completion of the bonded jobs. No Texas cases are cited on the subject by either party and our own independent research has not uncovered one precisely in point.

Several out of state cases are cited by banks in support of the definition and its propriety. For instance, in Long v. Forbes, 58 Wyo. 533, 136 P.2d 242, 246 (1943), the Court stated the rule which we believe to be controlling here, saying: "The cases seem to hold that full-time em-

---

1. "You are instructed that the phrase 'full time' as used in this Charge means that a party may substantially devote 'full time' to the performance of a given task without devoting literally all of his time to such work; but should he undertake other duties, of such a nature and to such an extent that such other duties interfere to any significant extent with such party's performance of the given task, he is no longer substantially devoting his full time to its performance."

ployment does not mean that the employee may not have some time that he may use in his personal affairs, or in other business, without breach of the employment contract."

Other cases cited by banks are set out in the footnote.[2] Considering the record as a whole, we are not persuaded that error is shown, and the point is overruled.

In its twelfth point, defendant complains of the trial court's refusal to submit its requested special issue quoted in the margin.[3] The action of the court was proper and the point is overruled. It was specifically provided in the trust agreement that the payment to banks would be paid "on the express condition that this Agreement has not been breached by Contractor in any way *at the specified dates.*" (emphasis supplied) As indicated earlier, the jury found that upon each of the dates mentioned in the trust agreement, contractor had devoted substantially full time to the completion of the bonded jobs. The defendant, if it was to prevail upon its theory of breach by contractor, should have tendered an issue inquiring of contractor's breach, *at some material date.* Cf. C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191, 194 (Tex.1966). Breach of the agreement by contractor, after December 15, 1969, would have been wholly immaterial to the rights of the parties. Point twelve is overruled.

Having carefully reviewed the record and all of the assignments brought forward and finding no error, the judgment of the trial court is in all things

Affirmed.

2. Johnson v. Stoughton Wagon Co., 118 Wis. 438, 95 N.W. 394 (1903); Hermann v. Littlefield, 109 Cal. 430, 42 P. 443 (1895); Stone v. Bancroft, 139 Cal. 78, 70 P. 1017, 72 P. 717 (1902); Harlan v. Washington National Insurance Company, 388 Pa. 88, 130 A.2d 140 (1957).

3. "Do you find from a preponderance of the evidence that McKenzie Construction Company and A. J. McKenzie individually, failed to devote its and his full time to expedite completion of the work and failed to diligently pursue all items of work that were necessary or incidental to the completion, acceptance and final payment of the contracts in question?"