437 A.2d 1224

**Dorothy A. MILLER, Appellant,**

v.

**The AETNA LIFE INSURANCE COMPANY, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 14, 1981.

Decided Dec. 28, 1981.

Reargument Denied Feb. 16, 1982.

Joseph M. Maurizi, Arthur Cutruzzula, Balzarini, Carey & Maurizi, Pittsburgh, for appellant.

Robert S. Garrett, Frank J. Micale, Egler & Reinstadtler, Pittsburgh, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION

NIX, Justice.

Appellant, Dorothy Miller, claimed to be entitled to certain benefits under a policy issued by appellee, the Aetna Life Insurance Company, for the death of her husband, Jesse John Miller, Jr. Appellee, Aetna Life Insurance Company, refused to pay the benefits, and appellant sued in the Court of Common Pleas of Allegheny County. The Court of Common Pleas ruled in favor of Aetna; the Superior Court affirmed, 427 A.2d 246. The petition for allowance of appeal was granted and brings the case before us for our review. The undisputed facts are as follows.

Decedent was a production and maintenance worker at the Indiana, Pennsylvania, plant of Fisher Scientific Company, beginning on February 14, 1966. He was a member of Indiana County Lodge 1582 of the International Association of Machinists and Aerospace Workers, AFL–CIO, which was the bargaining agent for workers at the plant. The union and Fisher had a collective bargaining agreement that expired on July 31, 1975. The union went on strike on August 6 and Jesse Miller, as a member of the union, participated in the work stoppage. On September 17, while the strike was still in progress, decedent Miller was killed in an accident.

Aetna and Fisher had in effect a group policy which provided for accidental death and dismemberment coverage. The policy provided a basic benefit of $4,000.00 and an optional benefit of $14,000.00. The premiums for the basic benefit was paid for the employees by Fisher and the optional coverage, if elected, was contributed by the employee through payroll deductions. There was also a group life insurance policy, with Aetna, which provided a basic death benefit of $4,000.00 and an optional benefit of $14,000.00. The allocation for responsibility for the payment of premiums was the same as in the case of the accidental death and dismemberment coverage. In each instance the decedent had opted for the optional coverage and had named his wife, appellant, as his beneficiary. The payment of premiums for

the optional benefits were transmitted to Aetna by Fisher in a lump sum payment without designation of the individual insured. Premiums were payable on a monthly basis in advance of each month of coverage, and there was a thirty-one-day grace period after each monthly premium was due.

Premiums were paid for August, 1975. On August 20, Fisher informed his employees by letter that it would not pay premiums for September, that employees could continue their coverage by paying the premiums themselves, and that a Fisher representative would be available to accept premium payments at a certain location from August 22–28. Decedent had not paid the premium for September at the time of his death. Aetna paid $18,000 in basic and optional life insurance benefits, but it refused to pay an additional $18,000 in accidental death and dismemberment benefits to which petitioner claimed to be entitled.

Both the Court of Common Pleas and the Superior Court relied upon the premise that the participation by decedent in the strike constituted a cessation of active work by the employee under Article III of the policy causing a termination of coverage thereunder. By relying upon the fact that decedent's participation in the strike provided a basis for termination of the policy under Article III, Section 1(2), the lower courts avoided the consequences of the policy grace period since the grace period would not be applicable where there is a termination pursuant to Article III, Section 1(2).[1]

1.  Article III  Termination of Insurance
    Section 1.  Employee Coverage
    All insurance of any employee under this policy *shall terminate* at the earliest time specified below:
    (1) Upon discontinuance of the policy.
    (2) Immediately when the employee's employment with a participant employer in the classes of employees eligible for insurance terminates. *Cessation of active work by an employee shall be deemed to be termination of his employment, except that in the case of an absence from active work on account of being pensioned or retired ... because of sickness or injury ... or ... because of temporary lay-off or leave of absence, his employment may, for purposes of insurance under this policy be deemed to continue until terminated by his participant employer...* [Emphasis added.]

In the briefs and arguments submitted, both sides have extensively addressed the question as to whether decedent's participation in the strike fell within Article III, Section 1(2). Whether or not the decedent's participation in the strike provided grounds for termination under the policy is immaterial if in this case the policy was in fact never terminated pursuant to Article III, Section 1(2).

We are faced with two questions: (1) was the policy terminated, and (2) if not, was the grace period for payment of premiums applicable. The fact that striking employees were permitted by the employer and insurer to receive coverage throughout the work stoppage under the policy refutes the contention there was a termination. The other striking employees who had paid the required premiums were deemed covered. In the letter of August 20 sent by Fisher to its striking employees, the following language appears:

> Accordingly, we have decided to give you the opportunity to continue your insurance. On weekdays beginning Friday, August 22, and running through Thursday August 28, from 8 a. m. until noon, we will have a room open at the Holiday Inn to receive your premium payment of $_____ which will cover . . . through September 30, 1975. We will contact you before the end of September and later months to see if you still wish to continue your insurance. (R. 115a)

■ The insurer's concession that decedent was insured until August 31 [2] admits the absence of termination and is incompatible with the position that the policy was automatically terminated for work stoppage which occurred on August 5. Moreover, if there had been a termination of the policy pursuant to Article III, Section 1(2), coverage would have been terminated on August 5 when the work stoppage began. We agree with appellant that Article III, Section

---

2. In correspondence from Aetna to the attorney for appellant, dated February 19, 1976, in which the insurer stated its legal position relating to the claim, the insurer conceded:

. . . Mr. Miller's coverage terminated August 31, 1975, . . . (R. 78a)

1(2) is irrelevant since the record clearly demonstrates that there was no termination of the policy under the provision. It is also clear the true basis for the refusal to honor appellant's claim was decedent's failure to make payment of the September premium prior to his untimely demise.

The trial court attempted to avoid this patent waiver of the right to terminate under Article III, Section 1(2) by the insurer through noting the due date for monthly premium payments fell prior to the commencement of the work stoppage. Although the obligation arose before the actual work stoppage, Fisher's transmittal of the premiums to Aetna for the month of August was not made until after the work stoppage had begun. Moreover, as stated, premiums were paid and accepted for some of the striking employees throughout the entire period of the work stoppage. This is not a case where the insurer accepts a premium without knowledge that a term of the policy may have been violated. Here, it is clear that the insurer was aware of the facts that may have justified termination under Article III, Section 1(2) and, nevertheless, continued the coverage as long as the striking employee paid the premium.

We also reject the proposition that there was a discontinuance of the policy as a result of a mutual agreement entered into between the participating employer and the insurer. The appellee in addition to arguing a termination of the policy urges alternatively that there was a mutual agreement between Fisher and Aetna to discontinue the policy as of August 31, 1975. He then relies upon *Miller v. Travelers Life Insurance Co.*, 143 Pa.Super. 270, 17 A.2d 907 (1940) to argue that the grace period is inoperative where the policy has expired by the agreement of the parties. Here, again, the instant record does not supply the factual predicate for such a contention. At no point did Aetna and Fisher agree to discontinue the policy for the striking employees. What did occur was that Aetna agreed to continue the coverage for the employees provided that they paid the premium.

■ Second, having determined that the insurance policy was not discontinued or terminated, the question then becomes what effect does the nonpayment of the premium on the due date have upon the insurance coverage. Article IV, Section 4 of the insurance policy provides:

> Grace Period. A grace period of thirty-one days following the due date shall be allowed the policyholder for the payment of each premium.

Appellee argues that decedent was not in the insured class and thus the grace period does not apply. We disagree. Clearly, Jesse Miller was in the insured class. Fisher by letter continued coverage for all striking employees. However, Fisher declined to pay the premiums after August 31, 1975 and instructed the employee to make payment. Aetna acquiesced in this temporary modification of payment responsibility. That acceptance kept all of the terms of the policy in full force and effect. Since the accidental death occurred within the grace period, coverage should not have been denied.

We recognize the legitimacy of appellee's statement that a period of grace does not mean free insurance. In *Miller v. The Travelers Insurance Company, supra,* it was held that a grace period for payment of premiums does not keep a group insurance in force after the effective date of termination by mutual agreement between the employer and the insurer. On the other side of the coin, if the insurable accident occurs during the period of grace, to deny coverage solely on the ground of nonpayment of premium would make the grace period illusory. The solution, of course, is to deduct from the recovery the amount of premiums due.

The Order of the Superior Court is hereby reversed.

ROBERTS, J., filed a dissenting opinion in which O'BRIEN, C. J., and WILKINSON, J., joined.

ROBERTS, Justice, dissenting.

I dissent. This is a case of a routine refusal to pay a claim because of nonpayment of premium. The majority's solu-

tion, however, is far from routine. Rather, the majority holds that a person who has failed to pay an insurance premium either upon its due date or within the subsequent grace period may nonetheless recover for an accident sustained during that grace period. It does so on the novel theory that the beneficiary may "pay" the required premium over six years later through a deduction from the proceeds of the insurance policy.

By permitting appellant to "pay" for the last month of her husband's coverage over six years after the payment was due, the majority totally disregards the plain language of the insurance policy. Article IV, Section 4 of the policy provides:

"Grace Period. A grace period of thirty-one days following the due date shall be allowed the policyholder for the payment of each premium."

There is no question that appellant's husband met with his fatal accident during the grace period allowed by Aetna for the payment of the September, 1975, premium, a premium which appellant's husband was required to pay. Thus, if appellant's husband had paid the September premium at any time before his death on September 20—or if appellant had paid the premium on her husband's behalf at any time through October 2, 1975, the date of expiration of the grace period—appellant would be entitled to recover under the policy. But the record is clear that, although notice was sent to appellant's husband that the September premium would be his responsibility, no payment from appellant's husband or appellant was ever received by either Fisher or Aetna.

As the majority recognizes, a grace period does not provide a period of free insurance. Under a grace period, the policy remains in effect after a policyholder has missed a payment, but payment of the premium within the time "allowed . . . for the payment" is a condition subsequent to the policy's effectiveness for that period. See *Brams v. New York Life Ins. Co.*, 299 Pa. 11, 148 A. 855 (1930). If, as here, payment is not made within the grace period, the condition

fails, and coverage is terminated as of the end of the last period for which the premium has been paid (here, August 31).

Because payment for coverage of appellant's husband was not forthcoming within the time allowed by the grace period, coverage was properly denied, and the order of the Superior Court should be affirmed.

O'BRIEN, C. J., and WILKINSON, J., join in this dissenting opinion.