### 0031

Albert D. CUDD, as Administrator of the Estate of Kenneth Joe Cudd, Appellant, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Respondent.

Ella W. CUDD, Appellant, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Respondent.

(310 S. E. (2d) 830)

Court of Appeals

*Howard S. Thomas* and *James J. Raman*, Spartanburg, *for appellants.*

*William M. Grant, Jr.*, of *Haynsworth, Perry, Bryant, Marion & Johnstone*, Greenville, *for respondent.*

Dec. 28, 1983.

GOOLSBY, Judge:

An administrator and a designated beneficiary brought these actions to collect medical and life insurance benefits respectively under a group policy issued by the respondent, John Hancock Mutual Life Insurance Company, to the decedent, Kenneth Joe Cudd, through his employer, the Kohler Company. Albert D. Cudd, the decedent's administrator, and Ella W. Cudd, the decedent's designated beneficiary under the group policy's life insurance provision, appeal the lower court's direction of verdicts in both cases. We affirm.

The evidence in the two cases, which were consolidated for appeal, is substantially the same. The issues on appeal involve

an interpretation of a policy provision, the admissibility of certain evidence, the impact of the Labor Management Relations Act, 1947 [29 U.S.C. §§ 141 *et seq.*], and the effect of a state statute mandating that group health insurance policies contain continuation and conversion privileges. 1978 S. C. Acts 547.

The facts are largely undisputed. John Hancock issued a group policy to the employees of the Kohler Company. The decedent was one such employee. At midnight on February 1, 1979, he and other employees walked off their jobs on strike. Fifty-two (52) days later on March 25, 1979, the decedent, still out on strike, received injuries in a car crash. He was hospitalized, lived three more days, and died on March 28, 1979.

On the last full work day before the strike began, the employer distributed to supervisors and foremen and posted on company bulletin boards pursuant to its contract with the union a notice addressed to all employees. The notice counseled that "[e]mployees who do not'work . . . will not be covered for . . . Company Fringe Benefits, unless the employee pays the full premium separately." The announcement also warned that "the Company may permanently [sic] fill with new employees, the jobs vacated by strikers."

Kohler Company discontinued paying its share of the premiums due under the group policy when the decedent went on strike. The decedent elected not to pay them separately.

The policy expressly states that "[e]mployment for insurance purposes terminates on the date the employee ceases active work with his . . . [e]mployer. . . ." Under the policy, an employee is

> considered "actively at work" for the purposes of insurance if he reports for work on the date in question at his usual place of employment with his . . . [e]mployer . . . and . . . he is able to perform all of the usual and customary duties of his occupation on a regular full-time basis.

An informational brochure given to all Kohler employees advised them with regard to their group life insurance coverage that should "you leave the Company for any reason before retiring, your coverage continues for 31 days after the date you terminate."

The appellants' principal argument centers on the trial court's direction of verdicts in John Hancock's favor.

They assert that the trial court erred in ruling as a matter of law that the decedent's employment with Kohler Company terminated and he ceased active work when he left on strike.

In passing upon a defendant's motion for a directed verdict, the trial court is bound to consider the evidence in the light most favorable to the plaintiff [*King v. North River Ins. Co*, 278 S. C. 411, 297 S. E. (2d) 637 (1982); *Cain v. Noel*, 268 S. C. 583, 235 S. E. (2d) 292 (1977)]; and if the evidence permits but the single reasonable inference that the plaintiff has failed to make out his case a duty arises for the court to direct a verdict in the defendant's favor. *Lail v. S. C. State Highway Dept.*, 244 S. C. 237, 136 S. E. (2d) 306 (1964); *Owens v. S. C. State Highway Dept.*, 239 S. C. 44, 121 S. E. (2d) 240 (1961). The evidence here established such a duty in each case.

The appellants argue, however, that a withholding statement showing that Kohler Company compensated the decedent after his death for unused vacation and deducted a small sum for dependent life insurance created a jury issue regarding whether the decedent's employment with Kohler had actually terminated before he was fatally injured. Kohler, like many employers, pays employees for their earned accumulated leave when their employment with the company comes to an end. Several days after his death, the company on April 6, 1979, paid the decedent for the leave time which he had accumulated prior to going on strike. From the amount due the decedent for unused vacation, the company deducted 14 cents owed by him for dependent coverage.

We agree with the trial judge. The issue in both cases involved whether the decedent had "cease[d] active work" and not whether he was considered a Kohler employee when he was injured and died. The policy in question does not refer to one's status as an employee but to one's posture regarding work. The term "active work" is not synonymous with the word "employment." A person may "cease[ ] active work" and yet remain an "employee." *Landis v. American Potash & Chemical Corp.*, 78 Nev. 424, 375 P. (2d) 402 (1962); *Moss v. Aetna Life Ins. Co.*, 267 S. C. 370, 228 S. E. (2d) 108 (1976). The

accrued leave payment and deduction for dependent life insurance raised no factual issue concerning the decedent's work situation.

The appellants principally rely upon *Cogsdill v. Metropolitan Life Ins. Co.*, 158 S. C. 371, 155 S. E. 747 (1930), *Thompson v. Pacific Mills*, 141 S. C. 303, 139 S. E. 619 (1927); *Shears v. All States Life Ins. Co.*, 242 Ala. 249, 5 So. (2d) 808 (1942); and *Miller v. Aetna Life Ins. Co.*, 496 Pa. 642, 437 A. (2d) 1224 (1981), to support their contention that the decedent had not terminated his employment and had not ceased active work while the strike was in progress. Neither *Cogsdill*, *Thompson*, nor *Shears* dealt with a striking employee who had "cease[d] active work." *Miller*, it is true, involved a striking employee; however, his death occurred, unlike the decedent's in this case, within a grace period provided by the policy itself. *Cf. Powell v. Equitable Life Assur. Soc.*, 173 S. C. 50, 174 S. E. 649 (1934). Further, there is no evidence here that the decedent ever paid a premium to keep the group policy in force beyond its termination date or grace period. *See Miller v. Aetna Life Ins. Co., supra* at 1227-28 (Roberts, J., dissenting).

Without question, the decedent "cease[d] active work" within the meaning of Kohler's group policy when he deserted his work station and declined to perform his regular and customary duties in order to participate in a work stoppage. *Landis v. American Potash & Chemical Corp., supra.* Like the deceased in *Chrosniak v. Metropolitan Life Ins. Co.*, 121 Misc. 453, 201 N. Y. S. 211 (1923), aff'd without op., 209 App. Div. 846, 204 N. Y. S. 898 (1924), the decedent here became ineligible for insurance benefits under the group policy because he quit active work when a strike ensued and paid no premium after the company stopped paying them for him. *Cf.* Annot., 58 A. L. R. (3d) 993, 1008 and 1012 (1974); Annot., 68 A. L. R. (2d) 8, 48 (1959). The lower court properly directed verdicts for the insurer.

In the action brought by the administrator a withholding statement issued to the decedent after his death was proffered in evidence. The document, which was briefly discussed before, showed a payment for accrued vacation time and a deduction of 14 cents for dependent life insurance. The trial judge deemed the document irrelevant but admitted it qualifiedly. In the action brought by the designated benefi-

ciary, the withholding statement was admitted without objection and without limitation. In deciding John Hancock's motions for directed verdict, the trial judge gave the document no consideration whatever. The complaint is made by the appellant administrator that the trial judge should not have qualified the document's admission.

The admission and rejection of evidence is largely within the sound discretion of the trial judge, and the exercise of his discretion in either admitting or rejecting evidence will not be reviewed by the Court of Appeals absent a clear showing that the trial judge abused his discretion, committed legal error in its exercise, and prejudiced the appellant's rights. *S. C. State Highway Dept. v. Rural Land Co.*, 250 S. C. 12, 156 S. E. (2d) 333 (1967); *Chastain v. United Ins. Co.*, 230 S. C. 465, 96 S. E. (2d) 464 (1957). We agree with the conclusion of the trial judge. The document was irrelevant. While the withholding statement, at the most, constitutes evidence that an employer-employee relationship continued to exist between Kohler and the decedent during the strike, the document is not susceptible of the inference that the decedent had not "cease[d] active work." *Landis v. American Potash & Chemical Corp., supra.* The trial judge was right in the administrator's case to qualify the statement's admission and he was correct in both cases when he disregarded the document entirely in ruling on the motions for directed verdict.

The appellants also argue that the lower court erred in not holding the Labor Management Relations Act (LMRA) provided coverage to the decedent under the group insurance policy during the period. The record before us does not clearly show that the issue was presented to the lower court. An issue not raised in the lower court cannot be presented for the first time on appeal; hence, it may not be properly before us for decision. *Smith v. Smith*, 264 S. C. 624, 216 S. E. (2d) 541 (1975); *Cleveland v. Cleveland*, 243 S. C. 586, 135 S. E. (2d) 84 (1964). At any rate and again as outlined in the *Landis* case, *supra*, "the employer-employee relationship is a *status* which was not destroyed by the strike" [375 P. (2d) at 406]; and as *Chrosniak, supra*, was interpreted by *Landis* to say, "a striking employee is not engaged in *active employment* while out on strike and, a *fortiori*, ... he is not *actively*

*engaged in work* while out on strike" for purposes of the group insurance policy. *Id.* at 407. [Emphasis theirs.] The LMRA did not operate to keep the decedent's group insurance coverage intact while the work stoppage continued; therefore, the lower court need not have considered the LMRA and its effect.

Finally, there is the suggestion that the lower court erred in ruling that Act No. 547 of the 1978[1] [*see* S. C. Code of Laws § 38-35-946 (1976) (Cum. Supp., 1979)] did not extend coverage under the group insurance policy while the decedent was on a labor strike. The statute entitles an employee whose group health insurance has terminated for any reason to purchase extended coverage or a converted policy. In their brief, the appellants do no more than quote a portion of the statute. They fail to argue how it applies to these controversies. A failure to argue an exception constitutes an abandonment of it. *State v. Sullivan,* 277 S. C. 35, 282 S. E. (2d) 838 (1981); *State v. Hiott,* 276 S. C. 72, 276 S. E. (2d) 163 (1981).

Irrespective of whether the exception has been abandoned or not, the lower court properly held the statute did not extend the policy's health coverage. The decedent was not shown to have paid the required contribution.

> [A] conversion clause does not by and of itself continue the coverage of the insured employee after his employment has been terminated, since this provision is a mere option given to the insured employee to obtain an individual insurance policy, of which he may or may not avail himself, and is not in the nature of a grace period. . . . The fact that the inclusion of a conversion clause is required by statute does not change its nature as a mere option.

---

[1] Act No. 547 of 1978, which was later amended [*see* 1979 S. C. Acts 149], reads in pertinent part:

> A group policy . . . Which provides hospital, surgical or major medical expense insurance . . . shall provide that an employee . . . whose insurance under the group policy has been terminated for any reason . . . shall be entitled to have his coverage nonetheless continued under the policy for a period of at least six months and have issued to him by the insurer at the end of such six month period of continuation a policy of insurance (hereafter referred to as the *converted policy*). An employee . . . shall not be entitled to have his coverage continued or a converted policy issued to him if termination of his insurance under the group policy occurred because (i) he failed to pay any required contribution. . . .

Annot., 68 A. L. R. (2d) 8, 25 (1959).
The judgments below, therefore, are

Affirmed.

SHAW and CURETON, JJ., concur.